JOHNSON RAILROAD SIGNAL CO. *v.* UNION SWITCH & SIGNAL CO.

(*Circuit Court, W. D. Pennsylvania.* April 11, 1892.)

No. 13.

1. PATENTS FOR INVENTIONS—ASSIGNMENT AND LICENSE—POWER OF ATTORNEY.

C., the owner of letters patent, by a power of attorney appointed Y. his "sole agent" for the "purpose of working and developing the business of the said patents," for and in consideration of a specified royalty "upon every lever fitted upon any railway in the United States," etc., to be paid by Y. to C., "with power for the said Y. to negotiate the sale of said patents upon terms to be agreed upon." *Held*, that the power thus conferred did not warrant Y. in making an absolute sale of the patents without the concurrence of C.

2. SAME.

By an instrument of writing executed by Y. in his own name, and as his own act and deed, without the consent or knowledge of C., nor his subsequent acquiescence, Y. granted to a corporation, its successors and assigns, "the sole and exclusive

right and license under said recited patents to make, use, and sell the improvements therein described and claimed, or intended so to be, to the full ends of the respective terms of said patents," with a proviso that the grantee pay to Y. the said royalty. *Held*, that this was an attempted sale by Y. of the entire patents, and, being unauthorized by his power of attorney, was inoperative to pass the title thereto as against a subsequent grantee of C.

In Equity. On motion by cross complainant for injunction. Denied. For former report, see 43 Fed. Rep. 331.

*S. Schoyer*, for the motion.

*George W. Miller*, opposed.

ACHESON, Circuit Judge. This case is now before the court upon the motion of the Union Switch & Signal Company, the plaintiff in the cross bill, for a preliminary injunction against the Johnson Railroad Signal Company, the defendant in the cross bill. This branch of the case turns upon the question of title. Both parties claim title to the letters patent involved in this controversy under Frederick Cheeswright, assignee of William R. Sykes. By letter of attorney dated September 10, 1881, and executed under his hand and seal, Cheeswright appointed D. M. Yeomans his "sole agent" for the United States "for the purpose of working and developing the business of the said patents" therein, "for and in consideration of a payment to be well and truly made by the said D. M. Yeomans to me, the said Frederick Cheeswright, my heirs, executors, administrators, and assigns, as royalty, of four pounds per lever, British money, for every lever fitted upon any railway in the United States, to which Sykes' system of signaling may be attached or connected, with power for the said D. M. Yeomans to negotiate the sale of the said patents, upon terms to be agreed upon." The Union Switch & Signal Company acquired its title by an instrument in writing dated March 21, 1882, and executed under seal by the said D. M. Yeomans, not in the name or as the act and deed of his principal, Cheeswright, but in his own name, and as his own act and deed, and signed with his own name, without more. This paper, after reciting the letter of attorney from Cheeswright of September 10, 1881, proceeds thus:

"Now, in carrying out and accomplishing the purposes of the said agency, the said D. M. Yeomans, for and in consideration of one dollar to him in hand paid, and of royalties to be paid as hereinafter set forth, has given and granted, and does hereby give and grant, to the said the Union Switch & Signal Company, its successors and assigns, the sole and exclusive right and license, under said recited patents, to make, use, and sell the improvements therein described and claimed, or intended so to be, to the full ends of the respective terms of said patents: provided that and by the acceptance hereof the said licensee agrees that he will well and truly pay to the said Yeomans quarterly during said respective terms, and to his heirs, executors, administrators, and assigns, as royalty, four pounds per lever, British money, for every lever fitted by it upon any railway in the United States to which Sykes' system of signaling may be attached. Witness the hand and seal of the said D. M. Yeomans."

The title of the Johnson Railroad Signal Company was acquired under a power of attorney from Cheeswright to Henry Bezer, dated Octo-

ber 31, 1889, and an absolute assignment of the letters patent, in due form, dated December 17, 1889, executed by Bezer as attorney in fact of Cheeswright.

Nothing appears on the face of the papers or otherwise to show that Cheeswright assented to or ratified the instrument of March 21, 1882, executed by Yeomans, or that he acquiesced therein after knowledge; hence the question of title, as it is now presented, depends altogether upon the papers themselves. The title set up by the Union Switch & Signal Company is prior in date, but its validity is denied. It is not to be doubted that an instrument of writing, whereby the owner of a patent grants to a corporation, its successors and assigns, the sole and exclusive right and license to make, use, and sell the patented invention during the term of the patent, passes the whole monopoly, and vests in the assignee the title to the patent. *Nellis* v. *Insurance Co.*, 13 Fed. Rep. 451; *Pickhardt* v. *Packard*, 22 Fed. Rep. 532. It is, in effect, a sale of the entire patent. Now, such was the character of the instrument which Yeomans executed to the Union Switch & Signal Company. Had he authority, under his power of attorney, to make an assignment? I think it clear that he had not. He was appointed the "sole agent" of Cheeswright in the United States "for the purpose of working and developing the business of said patents." Within what precise limits he was confined in executing the designated purpose we need not inquire now. Certain it is that the sale of the patents was not within the scope of the agency as thus declared, for we find that such a sale was expressly provided for in the subsequent clause, "with power for the said D. M. Yeomans to negotiate the sale of the said patents, upon terms to be agreed upon." Indisputably the power thus conferred upon Yeomans to negotiate a sale of the patents did not warrant an absolute sale by him without the concurrence of Cheeswright. Yeomans might negotiate the terms of a proposed sale, but no sale could be consummated until the terms were accepted by Cheeswright. But Cheeswright was not a party to the assignment of March 21, 1882, nor does it appear that he ever consented to the terms thereof. Therefore, as an attempted sale of the letters patent, it was the unauthorized act of Yeomans, and inoperative to pass the title. It is, indeed, earnestly contended that, so long as Yeomans disposed of the letters patent upon the reserved royalty specified, he was at liberty to act as he did, and that the consent of Cheeswright was necessary only in the event of a transfer of the letters patent for a gross sum. But the intention to make such distinction is not expressed in the power of attorney, nor inferable from the language used. Whatever the terms of sale might be, the consent thereto of Cheeswright was essential to validate the transfer. As this conclusion is fatal to the present motion, I refrain from any further expression of opinion. Whether the instrument of March 21, 1882, is available to the Union Switch & Signal Company for any purpose ought not to be considered until the final hearing of the whole case.

The motion for an injunction is denied.