## Ella M. Wilson *v.* Wilson–Rogers, a corporation, Appellant.

*Principal and agent—Attorney in fact—Corporation—Transfer of stock.*

Possession by an agent of a letter of attorney to transfer stock of a corporation is no evidence of implied or apparent authority in him to exercise any powers other than those given in the instrument itself.

*Principal and agent—Corporation—Transfer of stock—Power of attorney—Husband and wife.*

An attorney in fact, acting under a general power of attorney for the sale of corporation stock, is not authorized to sell the same in part or in full payment and satisfaction of his individual indebtedness, without the knowledge, precedent authority or subsequent ratification of his principal; and it is immaterial that the person holding the power of attorney is the husband of the owner of the stock.

Argued March 31, 1897. Appeal, No. 27, Jan. T., 1897, by defendant, from judgment of C. P. No. 3, Phila. Co., March T., 1896, No. 692, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, and FELL, JJ. Affirmed.

Assumpsit to recover the value of corporation stock alleged to have been owned by the plaintiff. Before McMICHAEL, J.

The facts appear by the charge of the court which was as follows:

This is an action brought by Ella M. Wilson against Wilson-Rogers, a corporation. The plaintiff has sued to recover the sum of $1,622.20, with interest from August 1, 1895, and alleges that she sold and delivered to Wilson-Rogers, a corporation, thirty shares of the capital stock of the said corporation for the price of $100 a share, making a total price of $3,000; on account

of which total price she has since been paid in various instalments, in cash, the sum of $500; and she allows to the defendant a further credit of $877.73, leaving due the balance aforesaid. The defendant filed a general plea of nonassumpsit to this statement, and the case has come before you to determine what, if any, amount of money is due by the defendant corporation to the plaintiff.

The plaintiff, having offered in evidence a certificate of incorporation of the Wilson-Rogers Company, which showed that Ella M. Wilson was the owner, at the time of the incorporation, of forty-five shares of stock in the defendant company, offered testimony which tended to prove that on August 1, 1895, the plaintiff, Ella M. Wilson, gave a power of attorney to her husband, Joseph A. Wilson, to sell her stocks, and among others, the thirty shares about which the present dispute has arisen; that acting under that power of attorney, Joseph A. Wilson did sell the thirty shares to the defendant corporation, and that a bill of sale was executed by him on behalf of his principal, Ella M. Wilson, on which the consideration for the stock was named as $3,000; that a credit of $877.73, which was the amount of shortage due by Joseph A. Wilson to the defendant company on the Hoover account, was allowed as a credit, and that this allowance was made under and by an authority given by the plaintiff to her husband or agent so to do, but that no authority was delegated by her to her husband to allow any further credits on account of his shortage or indebtedness to the company.

The defendant, on the other hand, has offered testimony to show that Joseph A. Wilson agreed that his indebtedness to the company, to the extent of $2,500 or thereabouts, should be allowed as a credit on the purchase-money of the said stock, and that with $500 in cash, which has been paid by the defendant company to the plaintiff, there has been full payment by the defendant to the plaintiff, and that they owe her nothing.

Upon this point of the case there has been a large amount of testimony, but on the threshold I desire to instruct you as to the law which is to guide you. [Ella M. Wilson, having given a general power of attorney, to sell her stock, to her husband, as her agent, he was fully empowered to dispose of that stock, but having executed a written instrument which recited the

consideration at $3,000, and delivered it to the defendant, in the absence of any further agreement, the defendant would be obliged to stand by this written bill of sale, and pay $3,000 in cash for the stock.] [1] It was testified, however, that there was a collateral agreement, by which the parties agreed that a certain amount of the indebtedness of Joseph A. Wilson should be applied to the purchase-money of this stock, and [I instruct you that only so much of that indebtedness can be applied to that purchase-money as Ella M. Wilson authorized her husband to apply to it.] [2] [I need not elaborate the doctrine, but in the absence, as there is an absence in this case, of testimony to show that Mrs. Wilson authorized her husband to allow more than the Hoover claim to be credited to the purchase-money of her stock, you cannot so apply any other indebtedness of Mr. Wilson without any evidence that Ella M. Wilson either originally authorized him so to do, or thereafter ratified his agreement so to do.] [3]

Gentlemen, if you find that Ella M. Wilson was not the real owner of the shares of stock in controversy; if her husband, Joseph A. Wilson, was the real owner of the stock, and she was merely the nominal owner, then I instruct you that any agreement he made will be binding upon him, and also upon her, and should you come to the conclusion that the holding of the stock in her name was a mere trick or fraud, and that Joseph A. Wilson was the real owner of the stock in controversy, and if you further believe the witnesses who have said that Joseph A. Wilson agreed to allow as a credit his indebtedness to the company up to the amount of $2,500, in addition to the Hoover indebtedness, you may find a verdict for the defendants. The principle upon which this rests is, that fraud strikes down everything, and that no indicia of ownership will prevail where there has been fraud. Fraud is an artifice to deceive and injure. Fraud avoids every contract and every act. Fraud cuts down everything. The law sets itself against fraud to the extent of breaking through almost every rule, sacrificing every maxim, getting rid of every ground of opposition. The law so abhors fraud, that it will not allow any technical difficulties of any kind to interfere to prevent the success of truth and justice. Gentlemen, your verdict must be based upon the evidence. While it is my duty as the trial judge to instruct you upon rules of law

which are to govern you in rendering your verdict, the credibility of the witnesses is a matter for you to decide upon, and not for me. It is for the jury to say whether a witness is to be believed or disbelieved. It is your duty to reconcile the testimony of witnesses, if you can; but when they contradict each other, when their statements are irreconcilable, when there is an absolute variance or conflict in the testimony, it is for you to decide whom to believe. If I shall call your attention briefly to some of the testimony, I shall express no opinion upon it, and in accordance with the rule I have just given you, you must determine where the testimony conflicts, to what witnesses credit is to be given, and you must also determine what witnesses are telling the truth, or are approaching most nearly to the truth, in their testimony. While the credibility of witnesses is entirely for the jury, it is the province of the court to determine whether or not there is any evidence upon any disputed point. [And in this case, I am bound to instruct you that there is no evidence of any express authority given by Ella M. Wilson to her husband, Joseph A. Wilson, to apply more than the Hoover indebtedness, amounting to $877.73, in payment or as a credit on the consideration money for the sale of the thirty shares of stock. Nor is there any evidence that she subsequently ratified the alleged agreement of her agent (her husband) to apply other indebtedness to the consideration money of that stock.] [5] In order that you may understand me more fully, I shall endeavor to define simply what a ratification is. It is not necessary to advise you or instruct you what is the meaning of express authority. The words themselves carry their own meaning. Ratification is an adoption of a contract made on our behalf by some one we did not authorize, which relates back to the execution of the contract, and renders it obligatory from the outset. Full knowledge of the circumstances is necessary to a valid ratification, and where the person holding himself out as an agent is without authority to bind his alleged principal in this class of cases the principal is not bound, except where he ratifies.

[Reverting to the proofs, in the case at the bar, it is in evidence that Ella M. Wilson gave to her husband a general power of attorney to sell stocks, and that in pursuance of this power he sold thirty shares of the stock of Wilson-Rogers Company to the defendants, and in pursuance of that power a bill of sale was

executed, in which the consideration or price of the stock was named at $3,000.] [6] [This, gentlemen, appears not only from the papers themselves, but from the testimony of Henry V. Rogers, who, in answer to a question by counsel, " Was the assignment of the stock then executed by Mr. Wilson in pursuance of that power of attorney? replied, " Yes, sir," and the paper was shown him, and he was asked, " Is that the assignment? " to which he answered, " That is." So that in pursuance of that general power the stock was sold for the sum or price mentioned in the paper; and by the law of Pennsylvania, where parties have reduced to writing their agreement, they may not vary, alter or contradict the statements contained in the writing by parol testimony.] [7] [But there was an agreement collateral to this, about which the testimony is very conflicting. On the one hand the testimony on behalf of the plaintiff was that $877 was to be allowed as a credit, and the witnesses for the defendants say that a much larger sum was to be allowed, the sum, I think, of $2,500 ; but, gentlemen, whatever may have been the statements or alleged agreements of the agent, J. A. Wilson, in this regard, there is no testimony that Ella M. Wilson, owner of the stock, ever expressly authorized him to make any such promises or agreements on her behalf, nor is there any testimony to show that she thereafter ratified any such promise or agreement. Therefore, I instruct you that if you believe the thirty shares of stock were her stock, your verdict should be for the plaintiff for the amount claimed by her, that is, for the full price of the stock, $3,000, less $500 which has been paid on account, and less also the $877.73, which the plaintiff allows as a credit.] [8]

On the second branch of the case, in which the question arises whether the stock was in reality owned by Ella M. Wilson, or was simply in her name, placed there by her husband for his own fraudulent purposes, or was her stock paid for in her property, the testimony is conflicting. [On the one hand it appears that all the indicia of ownership were in the plaintiff, Ella M. Wilson. She was one of the original incorporators of the company, and in the certificate of incorporation, she appears as a subscriber to forty-five shares of stock, and the assessments and dividends credited to her as the owner of the stock. The certificate for the thirty shares in question in this case is in her

name, and the officers of the company appear to have been careful that the receipt for this certificate should be given by her, as there is testimony that after her husband, J. A. Wilson, receipted therefor as her attorney, a letter was written requesting her to receipt in person for the stock. There is also testimony in the case, admitted without objection, that as to fifteen shares of stock there were dealings with Mr. Henry V. Rogers, one of the officers of the defendant company, which show that he procured a loan for her of $1,200 on a portion of the stock, and was careful in all his correspondence to treat her as if she was the real owner of the stock.] [9] The plaintiff has not been content, however to rest alone upon the indicia, or "finger points," to translate the Latin word, of ownership, which point her out as the owner of the stock to all the world, but has brought testimony to show what was the consideration given by her for the issuance of this stock to her, and I shall briefly point out to you what this testimony is. On the other hand, the defendants on this point have offered testimony to contradict many of the statements of the plaintiff's witnesses, and to show that the ownership of Ella M. Wilson was in reality only a fraud; that she never gave a dollar for the stock; that her husband's interest in the business was sold by J. A. Wilson to Henry V. Rogers for a thousand dollars, and that, in pursuance of a collateral agreement to that bill of sale, that thousand dollars was loaned by Wilson to Rogers on the day after the sale had been completed, and that a promissory note was given by Mr. Rogers to Ella M. Wilson for the purpose of enabling Wilson to protect his property against his creditors. That is, I think, a portion of the case which you must look at carefully, and if you cannot reconcile the testimony you must decide, governed by the laws of evidence and your own experience, whom to believe. If it is true, as stated by the plaintiff herself and her husband, that the thousand dollars which Wilson received from Rogers was paid to her by her husband in part satisfaction of loans made by her to him, and then loaned on her behalf to Mr. Rogers and a promissory note given for the thousand dollars, that would tend to strengthen the evidence that Ella M. Wilson was the real owner of the stock. If, however, on the other hand, the story of Mr. Rogers and the other witnesses is true, it would tend to show that Wilson was endeavoring at

that time to secure the proceeds of the sale of his interest in the firm to himself and to defraud his creditors. And whether or not his wife was a party to this will largely depend on whether you believe her testimony on this point—that he brought $1,000 in bank notes home to her, and that she kept them, as she says, in a safe place over night, and then gave them back to him to take to Mr. Rogers and loan to him. This part of her testimony you may scrutinize. She was examined and cross-examined; you heard her story, and it is for you to judge as to her credibility upon this point.

From this point onward in the business transaction there is also a conflict in the testimony. Wilson says, in effect, that there was a new firm or business arrangement which went into effect after this transfer of his then existing interest in the firm to Rogers, and which existed up to the time of the formation of the corporation; that this interest of his in the firm, before the corporation was formed, he transferred and sold to his wife by bill of sale, drawn under the advice of counsel, which is in evidence, and that she by a bill of sale, which is not in evidence, but about which there has been some secondary evidence, sold and transferred it to Rogers or to the new corporation in part payment of her stock. On this point, too, the evidence is very conflicting. Mr. Rogers, if I understand his testimony correctly, and I will read portions of it referring to this, has testified that the assets of his own wife went to complete the payment for the stock which was allotted to the Wilsons; that neither J. A. Wilson nor Ella M. Wilson, at the time of the formation of the corporation, had any interest which he or she could assign or transfer, except the promissory note in favor of E. M. Wilson. The Wilsons, on the other hand, deny that any part of the consideration of the stock was a gift from Rogers, but assert that the stock was fully paid by the transfer of the $1,000 note given to Mrs. Wilson by the transfer of the interest of Wilson in the business, whatever it was, and by the assessments and dividends thereafter. [And, gentlemen, records of the court have been offered in evidence, which show that between November, 1891, and December, 1892, a suit was brought in the firm name of Wilson & Rogers for accounts arising between the periods named, and it is for you to consider this testimony in determining whether Rogers is giving an exact account of what was the real state of affairs.] [10]

Gentlemen, you have been patient and attentive in the discharge of your duties in this case, and this is a matter of dispute which you can satisfactorily solve only by a careful scrutiny of the testimony. [The case has taken us several days, although the learned counsel were of opinion when the jury was called that it would take but a few hours. [11]

Verdict and judgment for plaintiff for $1,743.75. Defendant appealed.

*Errors assigned* among others were (1–3, 5–11) above instructions, quoting them.

*S. Morris Waln*, for appellant.—A certificate of stock accompanied by a power of attorney to transfer, either filled up or in blank, is, in the hands of a third party, evidence of ownership: Prall v. Tilt, 1 Stewart, 479; Baker's App., 108 Pa. 510; App. of Penna. Co., 86 Pa. 102; Wood's App., 92 Pa. 379; Mount Holly, etc., Turnpike Co. v. Ferree, 2 C. E. Green (N. J.), 117; Kortright v. Commercial Bank of Buffalo, 20 Wend. 91; Bank v. Kortright, 22 Wend. 348; Fatman v. Loback, 1 Duer, 354; Leavitt v. Fisher, 4 Duer, 1; Bank v. Lanier, 11 Wallace, 369; Bridgeport Bank v. N. Y. & N. H. R. R., 30 Conn. 270; Finney's App., 59 Pa. 398; Penna. R. Co.'s App., 86 Pa. 80. As between principal and third parties, the true limit of the agent's authority to bind the former is the apparent authority with which the agent is invested: Brooke v. R. R., 108 Pa. 530; McNeile v. Cridland, 168 Pa. 16; Geier v. Shade, 109 Pa. 180; Rothermal v. Hughes, 134 Pa. 510.

A party seeking to enforce a contract made by his agent is bound by his declarations made at the time, although he has exceeded his authority: Caley v. R. R., 80 Pa. 363; Mundorff v. Wickersham, 63 Pa. 87; Story on Agency, 293; Spath's Est., 144 Pa. 391.

Parol evidence is admissible to show a verbal contemporaneous agreement which induces the execution of the written obligation, though it may have the effect of varying or changing the terms of the contract: Bown v. Morange, 108 Pa. 69.

*John C. Bell*, for appellee.—The rule of law laid down by appellant is not applicable where the pledgee or purchaser has

knowledge that the stocks in fact belong to the real owner, or where there are circumstances to put such person on inquiry, which, if pursued, would result in such knowledge: Ryman v. Gerlach, 153 Pa. 197; Bernshouse v. Abbott, 45 N. J. L. 531; Sheffield v. Bank, L. R., 13 App. (H. L.) Cases, 334.

Where authority is created by a letter of attorney or other written instrument, all persons dealing with the attorney are chargeable with knowledge of its legal effect: Campbell v. Foster Home, 163 Pa. 609; Pollock v. Cohen, 32 Ohio, 514; Equitable Life Assurance Society v. Poe, 53 Md. 28.

An agent employed to sell stocks, or other property of his principal, cannot pledge or transfer the said property as security for or in payment of his own debts: DeBouchout v. Goldsmid, 5 Vesey Jr. 210; Warner v. Martin, 11 Howard, 209; Merrick v. Bernard, 1 Wash. 479; Hayes v. Colby, 65 N. H. 192; Stewart v. Woodward, 50 Vt. 78; Wright v. Cabot, 89 N. Y. 570; Purdy v. Powers, 6 Pa. 494; Todd v. Lorah, 75 Pa. 155; Bernshouse v. Abbott, 45 N. J. L. 531; Evans v. Waln, 71 Pa. 69.

The power conferred by the letter of attorney was simply to receive payment in money: Paul v. Grimm, 165 Pa. 139; McCulloch v. McKee, 16 Pa. 289; Bank v. Ashworth, 123 Pa. 212; Attwood v. Munnings, 7 Barn. & Cres. 278; Perry v. Holl, 2 DeG. F. & J. 38; Rossiter v. Rossiter, 8 Wendell, 494.

The very purpose of a power of attorney is to prescribe and publish the limits within which the agent shall act, so as not to leave to the uncertainty of memory, and those who deal with him the risk of misrepresentation or misconception as to the extent of his authority. To confer express authority, is to withhold implied authority: Claflin v. Continental Works, 85 Ga. 27; Wharton on Agency, sec. 225; Mechem on Agency, sec. 306; Farmers' Bank v. Butchers' Bank, 16 N. Y. 134.


PER CURIAM, April 19, 1897:

This case hinged on questions of fact which the jury alone could legally determine. Among others, the learned trial judge submitted to them the question whether the plaintiff was the actual owner of the stock for the price of which this suit was brought, with instructions that if they found her husband was the real owner thereof, their verdict should be for the defendant. The verdict in plaintiff's favor has therefore, by necessary

implication, established, inter alia, the controlling fact that she, and not her husband, was the bona fide owner of the stock in question. Without referring specially to the testimony tending to sustain plaintiff's claim, it is enough to say that it was quite sufficient to justify the jury in finding as they did; and, in view of all the evidence on both sides, there appears to be no error in the learned judge's charge of which the defendant corporation has any just reason to complain.

Under the findings of fact of which the verdict is necessarily predicated, the case is narrowed down to the legal proposition, whether an attorney in fact, acting under the general power of attorney for the sale of corporation stock, is authorized to sell the same in part or in full payment and satisfaction of his individual indebtedness, without the knowledge, precedent authority or subsequent ratification of his principal. That such an agent may not use the property of his principal for any such purpose was recently recognized in Kern's Estate, 176 Pa. 375, and is too well settled to require discussion or further citations. If authority is needed for so plain a proposition, the case above referred to also holds that possession by such an agent of the letter of attorney is no evidence of implied or apparent authority in him to exercise any powers other than those given in the instrument itself.

The cases of irrevocable powers of attorney for a valuable consideration, relied on by the defendant corporation are virtually and proprio vigore assignments, and therefore inapplicable to the question under consideration.

The fact that the person holding the power of attorney in this case was the husband of the plaintiff could not, of course, make him any the less her agent; nor did it in any manner authorize the defendant corporation, without first obtaining plaintiff's consent, to use her money in paying her husband's debt to a greater extent than she had actually authorized.

We find nothing in any of the specifications that requires further notice. They are all overruled and the judgment is affirmed.