# Union Trust Company *v.* Means, Appellant.

*Principal and agent—Letter of attorney—Mortgage.*

Where a letter of attorney duly recorded authorizes the attorney to sell mortgages of which the owner is " now seized or possessed," and it appears that the attorney is the financial representative of a beneficial association, and that he transfers as attorney to the association certain mortgages acquired by his principal after the date of the letter of attorney, the letter of attorney will be strictly construed so as to apply only to mortgages owned by the principal at the date of the letter of attorney, and the association will be required to reassign to the owner the mortgages transferred to it.

Argued Nov. 5, 1901. Appeal, No. 131, Oct. T., 1901, by defendants, from decree of C. P. No. 2, Allegheny Co., Jan. T., 1895, No. 34, on bill in equity in case of Union Trust Company, Administrator of Johanna Montgomery, v. Charles E. Means, Jacob Joseph and John E. McCrickart, Trustees of Pittsburg Lodge No. 336, of the Independent Order of Odd Fellows. Before McCollum, C. J., Mitchell, Dean, Fell, Brown, Mestrezat and Potter, JJ. Affirmed.

Bill in equity to secure a reassignment of mortgages.

Frazier, P. J., filed the following opinion :

The object of the bill in this case was to secure a reassignment to plaintiff of five certain mortgages, and an accounting of moneys received by the defendant Lodge on account of those mortgages. From the bill, answer and proofs, we find the following facts :

### FINDINGS OF FACT.

1. On November 28, 1892, the plaintiff was the owner of five certain mortgages made to her by William H. Cain and wife, all of which were dated November 28, 1892, and duly recorded. Three of the mortgages being given to secure the payment of $700 each, one to secure the payment of $575, and one to secure the payment of $250.

2. That previous to becoming the owner of the above recited mortgages, plaintiff, on June 6, 1892, executed and delivered

to John E. McCrickart, one of the defendants, who at that time was engaged in business in this city as a real estate agent, a power of attorney in writing, which was duly recorded, by which she authorized and empowered him, inter alia, " to sell, barter, exchange, or dispose of any stocks, bonds, mortgages and any real estate of which I am now seized and possessed in fee simple or for any less estate, to any person or persons, for any price and in any manner whatsoever, and for these purposes to execute and acknowledge any deed or deeds, lease or leases, assignments or transfers, or other assurance or assurances with general covenants of warranty against all persons or any other covenants whatsoever as he may deem expedient." That under and in pursuance of this power of attorney, McCrickart continued to represent plaintiff until July 23, 1894, when the same was by her revoked and annulled.

3. That during the years 1891, 1892, 1893 and 1894, the defendants, McCrickart, Josephs and Means, were the duly elected and acting trustees of the defendant lodge; that, as such trustees, it was their duty to take charge of and invest the surplus funds of the lodge; that McCrickart was the active trustee, he alone handling the investment money of the lodge and making all investments for the lodge; that the amount of the investment fund March 31, 1893, was $5,879.25, September 29, 1893, $6,135.15, and March 30, 1894, $6,187.65, and was represented by mortgages and cash on hand according to reports made to the lodge by McCrickart at the dates above given.

4. That on March 31, 1893, McCrickart had in his hands cash belonging to the investment fund amounting to $908.65, and collected as interest and on account of mortgages between that date and September 29, 1893, the sum of $815.90, making the total amount of cash coming into his hands during that period of six months $1,724.55. In his report of September 29, 1893, to the lodge, McCrickart charges himself with the above amount of $1,724.55, and takes credit as of July 24, 1893, for the sum of $1,414, being the amount of two of the Cain mortgages mentioned in the bill with the accrued interest thereon. These mortgages were not assigned of record by McCrickart to himself, Josephs and Means as trustees until the 3d day of October, following; that on March 30, 1894, McCrickart reported to the lodge that he had on hand September 30, 1893,

cash to the amount of $310.55; that between that date and the date of the report he had received as interest and on account of payments on mortgages the sum of $717.50, making a total amount of cash coming into his hands during that period of six months of $1,028.05. In the report he charges himself with that amount, and takes credit for two of the Cain mortgages mentioned in the bill, viz : the one for $250, with $5.00 accrued interest thereon, and the other for $700, with $14.00 accrued interest thereon. The first of these mortgages McCrickart assigned to the trustees of the lodge, October 3, 1893, and the other March 14, 1894.

5. No report was made to the lodge by McCrickart subsequent to that of March 30, 1894. The books of the lodge, however, show that he continued to receive the funds of the lodge after that date, and on April 25, 1894, assigned to the trustees of the lodge another of the Cain mortgages mentioned in the bill (being the one designated as No. 4.), the amount thereof being $575 instead of $700, as erroneously stated in the bill. Subsequent to this last assignment, McCrickart paid over to the lodge the amount of the balance in his hands.

6. That the mortgage designated in the bill as No. 1 was assigned and transferred by the trustees of the lodge December 6, 1897; that those designated as Nos. 3, 4 and 5 have been paid to the lodge, and that designated as No. 2 is still held and owned by the lodge.

7. That McCrickart became insolvent and absconded some time during the summer of 1894; that plaintiff did not receive from him nor has she since received from the defendant lodge, or any other person, any payment whatever on account of the indebtedness secured by the Cain mortgages.

8. The plaintiff some time during the summer of 1892 visited Europe and remained there until June, 1894; that shortly after plaintiff's return home from Europe, McCrickart furnished her with a statement of his transactions for her account, in which statement he charged himself with the proceeds of the five Cain mortgages; that shortly thereafter he absconded, being at the time indebted to plaintiff in an amount exceeding $8,000, no part of which sum has he paid to plaintiff; that McCrickart is now a fugitive from justice, plaintiff having had him indicted for embezzlement.

### CONCLUSIONS OF LAW.

Two questions are raised in this case: First, did the letter of attorney of June 6, 1892, confer on McCrickart power to assign and transfer the Cain mortgages; and, second, if it did confer such power, were those mortgages assigned for value given at the time of the assignments, or were they assigned to cover a pre-existing debt of McCrickart to the defendant lodge? The words of the letter of attorney applicable to this case are: " to sell, barter, exchange or dispose of any stock, bonds, mortgages and any real estate of which I am now seized or possessed," with power to make deeds, leases, assignments and transfers necessary therefor. Letters of attorney are ordinarily subjected to a strict interpretation, and the authority given is never extended beyond their terms ; thus, as a general rule, a power to sell real estate does not confer a power to mortgage, and a power to sell, assign and transfer stocks will not include a power to pledge them for the agent's debt ; nor is a power to assign a promissory note an authority to confess judgment against his principal, and a power to sell land " for such sum or price and on such terms as to him shall seem meet," does not authorize him to receive payment otherwise than in money. The agent must adhere strictly to his instructions ; he is bound to obey the instructions of his principal to the letter, and they cannot be enlarged or extended in any particular without the consent of the principal. The power conferred in this case was in writing, and recorded in the recorder's office in this county. It was the duty of the defendant lodge to be informed as to its terms, especially when the agent with whom they were dealing was its financial representative, as well as the attorney in fact for Mrs. Montgomery, as against the defendants, we see no reason why the letter of attorney should not be strictly construed. It confers upon McCrickart power to sell and assign mortgages owned and possessed by plaintiff at the time of its execution, but not mortgages acquired after its execution. The Cain mortgages, having been acquired by her subsequent to the making of the letter of attorney, were not included within its provisions. Therefore, McCrickart had no authority to assign them to the lodge. Even if we had such authority, we doubt very much if the lodge has shown the payment of

such a consideration as would entitle it to retain them against the plaintiff.

In view of the foregoing conclusions, we find that the assignments to defendants by McCrickart of the five mortgages set forth in the bill were without authority, and, therefore, void. The lodge should therefore reassign to Mrs. Montgomery the mortgage it still holds, and pay to her the interest thereon received by it, and should also account to her for all moneys received by it, with interest thereon, from the other four mortgages.

A decree was entered in accordance with these findings.

*Error assigned* was the decree of the court.

*W. I. Craig*, for appellant.

*James P. Crawford*, with him *William M. Hall, Jr.; W. B. Adair* and *Horace J. Miller*, for appellee.

PER CURIAM, January 6, 1902:

We think the learned judge of the court below has not erred in his findings of fact or conclusions of law. He has followed these with a decree which seems to be reasonable and just.

Decree affirmed.