United Security Life Insurance and Trust Company of Penna., Appellant, v. Central National Bank of Phila.

*Principal and agent—Fraud—Notice of agent.*

The rule that knowledge or notice of a fraud to an agent in the course of his employment is notice to the principal does not apply where the agent, through notice to whom knowledge is to be imputed to the plaintiff, is himself the author of the fraud.

It is the duty of an agent to communicate all material information to his principal, and the presumption is that he has done so ; · but no agent who is acting in his own antagonistic interest, or has committed a fraud by which his principal is affected, can be presumed to have disclosed such fraud.

*Banks and banking—Checks—Payment.*

A banker's contract with his depositor is to pay the latter's checks only to the payee, or one who claims through a genuine indorsement.

A bank book settled, balance struck and checks returned to the depositor, will become an account stated, if not promptly examined and errors of amount pointed out with correction, but the depositor is under no obligation to follow up and ascertain the genuineness of the indorsements that carry the title after the check has left his hands.

*Principal and agent—Forging indorsement—Banks—Checks.*

Where the principal has drawn his check to the order of his creditor, and his agent, acting in his own antagonistic interest, forges the payee's name, and thus obtains money thereon from the bank, the principal is not chargeable with knowledge through notice to the agent, so as to make it negligence on his part in not promptly notifying the bank, after a duplicate check, drawn by the agent, and sent to the creditor, was, together with the first check, charged on the principal's books to the creditor's account.

A depositor, on return by the bank of its paid checks, is not bound to examine them to see that the indorsements are correct.

Argued Jan. 12, 1898. Appeal, No. 270, July T., 1897, by plaintiff, from order of C. P. No. 4, Phila. Co., June T., 1894, No. 897, dismissing exceptions to report of referee. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Assumpsit on checks.

The case was referred to Richard C. Dale, Esq., who reported as follows:

1. On December 6, 1893, the plaintiff drew its check, signed by its president and treasurer, to the order of H. J. Verner, teller, which check was by the said H. J. Verner indorsed to the order of Ralph H. Grant. This check upon its face bore the words " In set. agree. No. 2259, Ralph H. Grant." The circumstances under which the check was drawn were these : Early in October, 1893, Ralph H. Grant, of Scranton, applied to the plaintiff for a loan of $1,800, to be secured by mortgage on property in Scranton on which Grant proposed to erect a house. It was understood between Grant and C. S. Woodruff, the attorney of the plaintiff company in Scranton, that the plaintiff should not actually pay over to Grant the amount loaned until the house was fully completed, so as to make the property good security. In accordance with the method established by the plaintiff corporation in the conduct of its business, Grant, the borrower, was to take out a policy of life insurance for the amount of the loan, so that in case of death prior to the repayment of the loan, the proceeds of the life insurance policy would cancel the mortgage debt and the property would pass to his heirs free from any incumbrance. The books of the corporation plaintiff show as follows :

Application register, defendant's exhibit " A," that Grant's application bears date October 4, 1893, and was received October 5, 1893. The loan was approved by the executive committee of the board of directors under date of October 10, 1893, and the papers were sent to the plaintiff's conveyancer on October 23, 1893, the agreement for the loan then receiving a record number to identify it in the company's business as No. 2259. On November 3, 1893, the papers connected with the mortgage were delivered to the Commonwealth Title and Trust Company

for their examination, and on December 5, 1893, the plaintiff's books show that a settlement certificate was received from the title company, and that on the same day N. A. Williams, who was settlement officer of the plaintiff corporation, filled up what is called a voucher for the drawing of a check for the amount of the loan. The plaintiff was unable to produce the particular voucher for this transaction, as it has probably been destroyed, but the form of voucher used in the business of the corporation plaintiff shows that such voucher contains the name of the applicant for the loan, the agreement number, the amount of the loan. This voucher in the regular course of business is prepared and signed by the settlement officer, who at the date of this transaction was N. A. Williams. It is approved by the signature of the president and afterwards signed by a book-keeper, who draws from the check book a check in accordance with the data mentioned in the voucher. The check drawn in accordance with the voucher just referred to is the $1,800 check above mentioned. The signature of the president and treasurer is admittedly genuine, as is also the indorsement of H. J. Verner, teller. The further indorsement upon the check of " Ralph H. Grant " is forged, and from the evidence the referee finds the forgery was committed by N. A. Williams, the settlement officer of the corporation plaintiff, who, having the check in his possession after its execution in the regular course of business, forged the signature of Grant, placed his own name upon it, and deposited it in his personal deposit account with the Commonwealth Title and Trust Company, who subsequently deposited it to their credit in the deposit account kept with the Farmers' and Mechanics' National Bank, by whom the check was collected through the clearing house from the Central National Bank, the amount thereof being charged to the plaintiff's deposit account. This occurred in the regular course of business within two or three days; the exact date does not appear in the evidence. On December 31, the account of the plaintiff with the defendant was settled, and entry was made in plaintiff's bank book showing the balance on deposit and the checks paid were returned. The checks thus paid and returned included the $1,800 check above referred to. The plaintiff's deposit book was afterwards settled monthly, at the end of each month, and the balance struck was of course based upon the balance of December 31.

Upon the application register of the corporation plaintiff, note was made of the drawing of this check on December 6, 1893, and the fact of this drawing was also entered on other books of the plaintiff, kept in the regular course of business, as follows:

In ledger, defendant's exhibit "B," page 213, appears this entry: "December 6, 1893, R. H. Grant, agreement No. 2259, cash $1,800.00, mortgage investment $1,800.00."

In book entitled current analysis, defendant's exhibit "C," appears the following: "Grant No. 2259, $1,800.00."

In the book of record of loans kept by the actuary, defendant's exhibit "E," there is this entry: "12/93, No. 2259, Grant, Ralph H., page 30, Scranton, Pa., $1,800.00."

In loan register, defendant's exhibit "H," the transaction appears at page 254, giving the same number of mortgage loan No. 2259. The stub of the check book from which this check was drawn, defendant's exhibit "J," shows as follows: "No. 4669, 12/6/93, Ralph H. Grant, No. 2259, $1,800.00."

The plaintiff neither at or about the time this check was drawn received any voucher or receipt from Grant of the receipt of the money.

2. On March 27, 1894, N. A. Williams, who still was in the employment of the corporation plaintiff as its settlement officer, filled up another voucher for $1,800 for the same loan of Ralph H. Grant and procured another check to be drawn, signed by the president and treasurer, for $1,800. This check was indorsed to the order of the Commonwealth Title Insurance and Trust Company by the plaintiff's teller, and the proceeds of the check were used by the title company through whom the settlement for the Grant mortgage was made, in paying to Grant the amount of the loan less expenses. The voucher of March 27, 1894, as drawn, was for the same amount, and purported to be in settlement of the same transaction as that of December 6, 1893, the agreement number, No. 2259, being noted on it. The check was for $1,800, drawn in accordance with this voucher bearing date March 27, 1894, and is also expressed to be in settlement of agreement No. 2259, Ralph H. Grant. The stub of the check No. 5018, dated March 27, 1894, for $1,800, refers to agreement No. 2259, Ralph H. Grant, in this respect being similar to the stub of the check of Decem-

ber 6, 1893.   On March 27, 1894, at the date when the second check was drawn, the plaintiff's application register showed that a check had been drawn on December 6, 1893, in settlement of the transaction.   The plaintiff's ledger at page 314 contains an entry, "Ralph H. Grant, agreement No. 2259, cash $1,800.00, mortgage investment $1,800.00," and is in terms a duplication of the entry made on the same ledger at page 213, under date of December 6, 1893.

In the plaintiff's current analysis book Williams made a false entry of the number for the loan of March 27, 1894, it appearing in the same as No. 2368.

The plaintiff's loan register book shows that No. 2368 refers to a loan made to one Joseph L. Vandegrift, which is marked across in red ink, "Fallen through N. A. W."

The same false number is entered in plaintiff's actuary's loan register and in the current analysis book.

The settlement book of the plaintiff corporation, which was kept by Williams in the regular course of his employment, shows the transaction entered as closed under date of March 27, 1894, the number here given being No. 2268, which is stricken out and the figures No. 2259 written above it in red ink.   Reference to No. 2268 in the loan register shows an entirely different transaction.

In the settlement book the title company number is given as No. 25013.   This is the same number as is given in plaintiff's application register, defendant's exhibit "A," as the title company number for the settlement certificate which was received in December and for which the check of December 6, 1893, had already been given out.

3. On May 9, 1894, in the regular course of the plaintiff's business, upon a voucher presented by N. A. Williams as settlement officer, the plaintiff's president and treasurer signed a check of $300 to the order of W. E. Clear, teller, being the $300 check referred to hereinbefore.   W. E. Clear, teller, duly indorsed this check to the order of John B. Goodwin and handed the same to N. A. Williams, the settlement officer.   N. A. Williams forged the signature of Goodwin and deposited this check to his own credit in his deposit account with the Commonwealth Title and Trust Company.   The Commonwealth Title and Trust Company deposited the check to their credit with the

Farmers' and Mechanics' National Bank, through whom it was collected from the Central National Bank through the clearing house, within two or three days, and the amount thereon was charged by the defendant against the plaintiff's deposit account with the defendant.

On or about May 17, 1894, the corporation plaintiff discovered the fact that N. A. Williams had forged the signatures of Ralph H. Grant and John B. Goodwin upon the checks mentioned, and on June 6 made demand upon the defendant to recredit their account with the amount of these checks, which demand the defendant declined to accede to.

4. It appears from the books of the Commonwealth Title Insurance and Trust Company that on January 3, 1894, N. A. Williams, who committed the forgery, had to his credit in his account with that company a balance of $775, and that up to January 10, 1894, his balance remained upwards of $700.    On March 24, 1894, the balance to his credit was $1,646.09, and on March 27, 1894, his balance was $764.

Upon the facts as found the defendant has failed in its duty to the plaintiff in making payment of the checks of $1,800 and $300 indorsed as payable to Ralph H. Grant and John B. Goodwin.    The contract between a banker and his customer is to pay the customer's check or bills to the person or persons designated by the customer, and to none other, and if a check or bill is payable to order, the banker has only authority to pay it to the payee or to another person who becomes the holder by genuine indorsement.    In Robarts v. Tucker, 16 Adol. & Ellis, N. S. 560, Baron PARKE said (c. 578): " The banker cannot charge his customer with any other payments than those made in pursuance of that authority."    In the course of his argument in that case Sir FREDERICK THESIGER asserted that "if the banker has used due skill and diligence in endeavoring to ascertain the genuineness of the indorsement of a stranger he has done his duty, and the customer has no right to complain if the banker is deceived and pays the bill, though the indorsement be forged."    To which the judges replied as follows:

MAULE, J.: " Certainly the customer has no right to complain of the payment; and he would have no right to complain though the banker exercised neither skill nor diligence in ascertaining the genuineness of the indorsement before paying the

bill, or even paid it knowing it to be forged. Bankers may spend their own money in paying forged bills. But what you want is a case in which a banker has been permitted to debit his customer with such a payment, and I apprehend that there never was one." ALDERSON, B.: "You reason as if the customer bailed money to the banker to be kept with reasonable diligence and returned in specie. But the customer lends money to the banker and the banker promises to repay that money, and whilst indebted to pay the whole or any part of the debt to any person to whom his creditor, the customer, in the ordinary way requires him to pay it. . . ." Later in the argument, MAULE, J., remarked: "And a banker would be justified in refusing to pay until he had more information as to whether the presenter was holder or not.".

While there are but few American cases in which this precise question has been discussed, the law as stated by the exchequer chamber in the case just referred to may be accepted as fundamental. In the present case the correctness of the rule was not seriously questioned by counsel for defendant. Their defense arose upon several independent propositions, which will be stated and considered in order.

1. That the plaintiff was negligent in failing to use due diligence in discovering the forgery of the indorsement, "Ralph H. Grant," on the return of the $1,800 check immediately after the settlement by the defendant bank of the plaintiff's bank book on December 31, 1893, when it knew, or ought to have known, that it had no security or voucher which it ought to have had, had the payee of the check actually received the money. This proposition seems to involve a double suggestion of negligence: (a) in that the plaintiff was bound to examine the checks upon their return to verify the indorsements; (b) that the absence of a voucher or security receipting the loan to Grant, should have in itself notified the plaintiff that the money represented by the $1,800 check had not reached Grant.

The referee is of opinion that neither of these propositions can be sustained. While the Supreme Court of the United States, in the case of the Leather Manufacturers' Bank v. Morgan, 117 U. S. 96, clearly recognizes the rule that a depositor in a bank, upon the return, after settlement, of the bank book with entries of credits and deposits and the paid checks as

vouchers, is bound personally or by an authorized agent and with due diligence to examine the book and vouchers and to report to the bank without unreasonable delay any error which may be discovered, there is nothing in the case to justify the suggestion that it is the duty of a depositor to examine the indorsements which may have been placed upon the back of checks and to assume the burden of knowing the genuineness of such indorsements. The referee is of opinion that the business world has never undertaken to do business upon such understanding of the relative duties of bankers and their depositors; and in the absence of any authority to sustain such a proposition the referee is prepared to accept the conclusion of the court of appeals of New York, in Welsh v. the German American Bank, 73 N. Y. 424, in which that court held, "a depositor owes no duty to a bank requiring him to examine his pass book and the returned checks with a view to the detection of forgeries in the indorsements. He has a right to assume that the bank before paying his checks will ascertain the genuineness of the indorsement."

The referee is also of the opinion that the failure of the plaintiff to discover the misappropriation of the proceeds of the $1,800 check by reason of the absence of vouchers or securities to represent the same does not in itself show such negligence as will debar recovery in this action. Every one familiar with real estate settlements knows that after money is paid upon a mortgage loan, weeks and sometimes months elapse before the mortgage papers are returned from the recording office, or from the title company or conveyancer to whose care their preparation and the examination of title is intrusted. The referee is therefore unable to find in this evidence any evidence of negligence on the part of the plaintiff.

2. The defendant's second and third propositions will be considered together.

(2) The plaintiff was negligent in drawing the check on March 27, 1894, when there was abundant evidence on its own books that it was a duplication of the prior check and that there must have been clearly some fraud in the transaction.

(3) Williams, who committed the forgery, was the plaintiff's settlement officer, and he had knowledge of the forgery while acting in that capacity, and with such knowledge caused the

second check of March 27, 1894, to be drawn in the regular course of employment; moreover, even if he had not been the forger, he would certainly have acquired a knowledge of the fraud, which followed up would have shown the forgery from the record of the books which passed under his eyes in the course of his employment during the months of January, February and March.

In considering the defense thus set up it will be noticed that it is not sought to charge the plaintiff with the knowledge which Williams the forger had of his own wrongful act in making the indorsement " Ralph H. Grant." If this were the defendant's proposition, it could not be affirmed. The forgery of the name of Grant was not committed by Williams in the course of his employment. The plaintiff corporation was therefore not chargeable with any knowledge which rested within the breast of Williams, that he outside of the line of his duty had wrongfully written the name of Grant upon the $1,800 check of December 6. If authority were needed to sustain this proposition, it is found in the case already cited of Welsh v. The German American Bank, in which the precise proposition was passed upon by the court, and the principal held not chargeable with the knowledge possessed by his clerk, who had forged the indorsement of customers on checks drawn by the principal and delivered to the clerk for transmission. It is to be noticed, however, that the defendant's propositions do not seek to impute notice to the plaintiff from knowledge which rested within the breast of Williams. The defendant seeks to charge the plaintiff with notice by reason of the fact that entries made in the plaintiff's books in the regular course of business disclose the fact that upon one application, to wit: No. 2259, two checks for $1,800 had been drawn and made payable to the order of Ralph H. Grant. The facts which show that this was the case are fully stated in the referee's findings of facts, as already set forth. The entries which are there referred to show that upon the books of the corporation plaintiff is a series of entries which, if they had been examined by the president or any other competent person, would, on and after March 27, 1894, have shown clearly that two checks of like amount for the same transaction had been drawn and made payable to Ralph H. Grant. Of these entries the referee is of opinion

that the plaintiff must be taken to have had knowledge. The fact that Williams, their settlement officer, was the only person who in truth may have known of these entries, is no answer. The knowledge of the entries possessed by Williams was knowledge obtained by him in the course of his agency. He was the person trusted by the corporation to know the contents of those books. If he knew it and wrongfully concealed it, it does not relieve the plaintiff from the consequences of actual knowledge. The legal proposition that a corporation is chargeable with all the knowledge which its agents intrusted with the conduct of its business obtain in the course of that business, is one, for which it would not be proper to multiply authorities. The most recent case in our state is the National Bank of Bedford v. Stever, 169 Pa. 574, in which the proposition was reaffirmed.

The pertinency of the defense thus made is, that on and after March 27, 1894, the plaintiff must be considered as knowing that two checks had been drawn by it for $1,800 in settlement of loan No. 2259 and made payable to Ralph H. Grant. The moment the plaintiff obtained this knowledge it became the plaintiff's duty to inquire further and find an explanation of the duplication. Inquiry then made would have disclosed the fact of the forgery, and the forgery having been discovered, it became plaintiff's duty to immediately notify the defendant. The plaintiff does not question that upon knowledge of the forgery it became its duty to give notice, and there is no question that as soon as actual knowledge did come to the plaintiff such notice was given. The case turns on the proposition whether the notice given on or about May 17, after actual knowledge, was sufficiently prompt, when for reasons already given the plaintiff is chargeable with that knowledge as early as March 27. The referee is of opinion that the plaintiff being chargeable with knowledge on or about March 27, 1894, did not perform its duty to the defendant, no notice having been given to the defendant by the plaintiff of the forgery until on or about May 17, 1894.

The duty of diligence is clearly set forth in the case of Iron City National Bank v. Fort Pitt National Bank, 159 Pa. 46, and, while the circumstances of that case differ from those of the present case, the case clearly shows that in the course of business the duty of prompt notice of a discovered forgery is a portion of the commercial law of the state.

The evidence in the case shows that on March 27, 1894, Williams had to his credit as a depositor in the Commonwealth Title and Trust Company, $764. Had notice been given him that day this amount at least could have been recovered, but the referee is of opinion that is not necessary for the defendant to make effective the defense based upon the want of diligence of the plaintiff in giving notice of the forgery, to show with certainty that had notice been given at an earlier day a fund belonging to Williams was in existence which could have been attached and held. When it is once shown that the plaintiff failed to give prompt notice of the discovery of the forgery, the plaintiff's right of action is gone. The law assumes, and does not find it necessary to conduct an inquiry to verify the assumption, that had the notice been given promptly, the Central Bank might have taken steps to protect itself as against Williams. Entertaining these views as to the failure upon the part of the plaintiff to exercise diligence in giving notice, the referee is of opinion that the plaintiff is not entitled to recover from the defendant the sum of $1,800 paid by the defendant upon the forged indorsement of the check made payable to Ralph H. Grant.

With reference to the $300 check drawn on May 9, 1894, made payable to the order of John B. Goodwin, the referee is of opinion that there can be no recovery. By the findings already made the plaintiff is charged with knowledge on March 27, 1894, that N. A. Williams, its settlement officer, had forged the name of Ralph H. Grant. Being thus chargeable with knowledge of that fact, the plaintiff could not, in justice to the business world with which it was dealing, continue Williams in a fiduciary position. Having knowledge on that day that he was a forger, it continued him in his position and intrusted him with the means of perpetrating other frauds. Having thus wrongfully given him its confidence, the plaintiffs must accept the consequences of its breach, and for these reasons is of opinion that there can be no recovery by the plaintiff from the defendant of the sum of $300.

The referee reports that judgment in this case should be entered for the defendant.

*Errors assigned* were in dismissing exceptions to referee's report.

*Henry LaBarre Jayne*, with him *Biddle & Ward*, for appellant.—Notice to an agent is not notice to his principal if the agent has a personal interest which would lead him to conceal it: Kennedy v. Greene, 3 Mylne & K. 699; Cave v. Cave, L. R. 15 Chan. Div. 639; Thompson v. Cartwright, 33 Bev. 178; Fairfield Savings Bank v. Chase, 72 Me. 226; Barnes v. Trenton Gas Light Co., 27 N. J. Eq. 33; Allen v. South Boston R. R., 150 Mass. 200; Kennedy v. Green, 3 Myl. & K. 699; Espin v. Pemberton, 3 DeG. & J. 547; Rolland v. Hart, L. R. 6 Ch. App. Cases, 678; In re European Bank, L. R. 5 Ch. App. Cases, 358; Kettlewell v. Watson, L. R. 21 Ch. Div. 685; Dillaway v. Butler, 135 Mass. 479; Atlantic Cotton Mills v. Indian Orchard Mills, 147 Mass. 268; Howe v. Newmarch, 12 Allen, 49; In re Marseilles Extension Ry. Co., L. R. 7 Ch. App. 161; In re Hampshire Land Co. [1896], 2 Chan. 745; Gunster v. Scranton Power Co., 181 Pa. 327.

The knowledge of an agent, even in the absence of fraud, is not the knowledge of the principal if the former is acting beyond the scope of his authority: Weisser v. Denison, 10 N. Y. 68; Welsh v. Bank, 73 N. Y. 424; Frank v. Chemical Bank, 84 N. Y. 209; Bank v. Officer, 12 S. & R. 53.

The principal is not bound by the knowledge of his agent even in the absence of fraud, and although acting within the scope of his authority, if the agent is not engaged in transactions with third persons nor attempting to discharge a duty imposed primarily upon the principal: Leather, etc., Bank v. Morgan, 117 U. S. 96; Hardy v. Bank, 51 Md. 585; Dana v. Bank, 132 Mass. 156; Distilled Spirits, 11 Wall. 367; Dresser v. Norwood, 17 C. B. N. S. 466; Bank v. Stever, 169 Pa. 574; Blackburn, Low & Co. v. Vigors, L. R. 17 Q. B. D. 553; Ruggles v. General Int. Ins. Co., 4 Mason, 75; Welsh v. German American Bank, 73 N. Y. 424; Seventh Nat. Bank v. Cook, 73 Pa. 483; Dodge v. Nat. Exchange Bank, 20 Ohio, 234; Vanbibber v. Bank of Louisiana, 14 La. Ann. 481; Corn Exchange Bank v. Nassau Bank, 91 N. Y. 74; Bank v. Whitman, 94 U. S. 343.

*Rowland Evans*, with him *Edw. L. Perkins* and *R. L. Ashhurst*, for appellee.—It is very well settled that the findings of fact by a referee are as binding as the special verdict of a jury,

Bidwell v. Railway Co., 114 Pa. 535, and such findings are conclusive upon the court of error, except where they would be re-examinable, if the case has been tried before a jury : Lee v. Keys, 88 Pa. 175 ; Brown v. Dempsey, 95 Pa. 243 ; City v. Linnard, 97 Pa. 242 ; Ellison v. Hosie, 147 Pa. 336 ; McClure v. Times Publishing Co., 169 Pa. 213.

. It is an elementary principle that notice to the agent of a corporation binds the corporation, while notice to the individual stockholder does not : Morawetz on Corporations, sec. 520.

A corporation being an intangible entity, without personal consciousness, knowledge or memory, its knowledge can only be the knowledge of its officers or the entries in its books : Kennedy v. Green, 2 Myl. & K. 722.

Notice to an officer of a corporation as to a matter in his department is notice to the corporation, and for neglect of such notice the corporation is responsible : Patterson v. R. R., 76 Pa. 389 ; Spalding v. Bank, 9 Pa. 30 ; Bank v. Klingensmith, 7 Watts, 523 ; Nat. Bank of Bedford v. Stever, 169 Pa. 574 ; Morawetz on Corporations, sec. 540 *c* ; Union Bank v. Campbell, 4 Humphrey (Tenn.), 394 ; Terrell v. Mobile Bank, 12 Ala. 502 ; Bank v. Cushman, 121 Mass. 490 ; R. R. v. Schuyler, 34 N. Y. 30 ; Willis v. R. R., 6 W. N. C. 466 ; Leather Mfg. Bank v. Morgan, 117 U. S. 110 ; Continental Bank v. Bank of the Com., 50 N. Y. 575 ; Dana v. Bank, 132 Mass. 156.

In our case the plaintiff, after a lapse of nearly five months from notice of the payment of the check by defendant, repudiates the payment on the ground that the payee's indorsement was forged, and sues to recover back. It is not open to dispute that want of due diligence on the plaintiff's part in discovering the forgery and notifying the defendant precludes a recovery, even in an action under our act of 1849 : Roth v. Crissy, 30 Pa. 145 ; Rick v. Kelly, 30 Pa. 527 ; Chambers v. Union Nat. Bank, 78 Pa. 205 ; Corn Exchange Nat. Bank v. Nat. Bank of the Republic, 78 Pa. 233 ; Iron City Nat. Bank v. Fort Pitt Bank, 159 Pa. 46 ; Hardy v. Chesapeake Bank, 51 Md. 562 ; Dana v. Bank of the Republic, 132 Mass. 156 ; Bank v. Barnes, 65 Ill. 69.

OPINION BY MR. JUSTICE MITCHELL, May 2, 1898 :

The plaintiff was a depositor in the defendant bank and

brought this action to recover a balance claimed to be due on its deposit account. The defense was a denial of any such balance, the money having been paid out on two checks drawn by the plaintiff. The reply was that the payments were wrongfully made upon forged indorsements of the names of the payees.

The learned referee found that the indorsements were forgeries; that they were committed by one Williams, an employee of the plaintiff company, but that they were committed by Williams outside the scope of his employment. The referee therefore held that the defendant bank had violated its contract duty to the plaintiff by paying to the wrong persons, and would have been liable to the plaintiff, except for the latter's negligence. On this subject he found the further facts that the first check in question was drawn on December 6, 1893, for $1,800 in favor of one Grant, and duly charged in Grant's account as a payment to him, but his indorsement as payee was forged and the money embezzled by Williams; that on March 27, 1894, a second check was drawn to Grant as payee, for the same amount, also charged to Grant's account, and in this instance actually paid to him, that the entries in the plaintiff company's books showed that this second check was a duplication of the first, and that examination would at once have disclosed the fraud; that the duty of making the inquiry was on Williams and that being thus in the regular line of his employment his failure to discover and report the forgery was chargeable to plaintiff. "It is not sought" says the referee " to charge the plaintiff with the knowledge which Williams, the forger, had of his own wrongful act in making the indorsement ' Ralph H. Grant.' If this were the defendant's proposition it could not be affirmed. The forgery of the name of Grant was not committed by Williams in the course of his employment. The plaintiff corporation was therefore not chargeable with any knowledge which rested within the breast of Williams that he, outside of the line of his duty, had wrongfully written the name of Grant on the check of December 6, 1893. . . . The entries if they had been examined by the president or any other competent person, would, on and after March 27, 1894, have shown clearly that two checks of like amount for the same transaction had been drawn and made payable to Ralph H. Grant. Of these entries the referee is of opinion that the plaintiff must be taken to have had knowledge.

The fact that Williams, their settlement officer, was the only person who in truth may have known of these entries, is no answer. The knowledge of the entries possessed by Williams was knowledge obtained by him in the course of his agency. He was the person trusted by the corporation to know the contents of those books. If he knew it and wrongfully concealed it, it does not relieve the plaintiff from the consequences of actual knowledge. The legal proposition that a corporation is chargeable with all the knowledge which its agents, intrusted with the conduct of its business, obtain in the course of that business is one for which it would not be proper to multiply authorities." The forgery was not in fact discovered until May 17, 1894, when immediate notice was given to defendant, but the referee held that plaintiff being chargeable with constructive knowledge on March 27, the notice was too late.

The other check involved in the suit was drawn on May 9, 1894, the name of the payee forged and the money embezzled by Williams in a similar way. The referee again on the basis that the plaintiff was chargeable with knowledge on March 27 that Williams was a forger, held that it was negligent in continuing him in his position and thus enabling him to commit the second fraud.

The learned referee therefore decided the case entirely on the negligence of the plaintiff in acting on its knowledge of the fraud, and based his finding of such knowledge on the legal rule that knowledge or notice to an agent in the course of his employment is notice to the principal. Of the general rule there is no question. But in this case the agent, through notice to whom knowledge is to be imputed to the plaintiff, was himself the author of the fraud, and the question therefore arises whether the legal rule is applicable under such circumstances. On this question the cases are not entirely in harmony. We had occasion in Gunster v. Scranton Power Co., 181 Pa. 327, to review and consider them, and we then held that the weight of authority, as well as of sound reason, was against the application of the rule to such a case. The rule, as there said, is founded on the duty of the agent to communicate all material information to his principal and the presumption that he has done so, but no agent who is acting in his own antagonistic interest, or has committed a fraud by which his principal is

affected, can be presumed to have disclosed such fraud. It would be contrary to all experience of human nature, on which presumptions are founded. The learned and able arguments now presented have only confirmed our confidence in the soundness of the view there expressed, and they are decisive of this case. It is only fair to the learned referee to note that Gunster v. Scranton Power Co., supra, was not decided until after he had made his report.

Of course it is to be noted that this is not the case of an act done by an agent authorized, or apparently held out to the world as authorized, to do it, such as the illustration in the argument of appellee of the receipt of a depositor's money by the receiving teller of a bank. There the act being within his authority is the act of the bank which would therefore be responsible though the teller subsequently embezzled the money. Such cases stand on entirely different ground. So far as plaintiff was concerned the present was a case of breach of duty on the part of its officer which it was not bound to presume or anticipate.

The plaintiff's implied knowledge being thus taken out of the case there is no negligence and therefore no bar to its recovery. The referee rightly held that the banker's contract with his depositor is to pay the latter's checks only to the payee or one who claims through a genuine indorsement. He also held rightly that on the settlement of his bank book and the return of his checks the depositor is not bound to examine the latter to see that the indorsements are correct. He may assume that the bank has ascertained their genuineness before paying. A bank book settled, balance struck and checks returned to the depositor, will of course become an account stated if not promptly examined and errors of amount pointed out for correction, but the depositor is under no obligation to follow up and ascertain the genuineness of the indorsements that carry the title after the check has left his hands : Leather Manufacturer's Bank v. Morgan, 117 U. S. 96; Welsh v. German Am. Bank, 73 N. Y. 424.

Judgment reversed and judgment directed to be entered for the plaintiff.