## Cunningham v. First National Bank of Indiana, Appellant.

*Banks and banking—Checks—Forgery—Notice.*

Where a check is paid on a forged indorsement and the drawer of the check after discovering the forgery delays for six weeks in notifying the bank thereof, the drawer cannot recover from the bank the amount of the loss, if it appears that the bank in which the check was first deposited had failed in the meantime, and that if the bank upon which the check was drawn had had timely notice, it could have saved the loss by recourse to funds of the other bank.

Argued Oct. 22, 1907. Appeal, No. 177, Oct. T., 1907, by defendant, from judgment of C. P. Indiana Co., Sept. T., 1906,

No. 323, on verdict for plaintiff in case of R. H. Cunningham v. First National Bank of Indiana.   Before Mitchell, C. J., Fell, Brown, Mestrezat, Potter, Elkin and Stewart, JJ.. Reversed.

Assumpsit by a depositor against a bank to recover money paid on a forged indorsement of a check.   Before Telford, P. J.

The opinion of the Supreme Court states the case.

When J. D. Ayers was on the stand he was asked this question : " Q. Do you know the present condition of the Delmont National Bank, whether it is solvent or insolvent ? "

Mr. Emery :  Objected to.

The Court :  Objection sustained.

" Q. Do you know how much of a dividend the Delmont National Bank is paying ? "

Mr. Emery :  Objected to.

The Court :  Objection is sustained and an exception is granted to the defendant. [5]

The court charged in part as follows :

[It would seem that the date of notice of the forgery to the holder is not material, unless by delay the position of the party receiving the money has been altered for the worse in the meantime.   It would appear that after the plaintiff received knowledge of the forgery according to his testimony he gave the defendant prompt notice. . . . It appears from the evidence that the plaintiff, Cunningham, notified the bank promptly upon learning the fact of the forgery.   If the jury believe that he did so, then he did all that is required of him unless you shall find also that under the circumstances of this case, as they appear to you from the evidence, he should have, or could have, by ordinary care and diligence, discovered the forgery at an earlier date, and that by his failure to exercise such care and diligence the defendant was deprived of advantage which might have accrued to it from an earlier knowledge of the alleged forgery.] [6]

Verdict and judgment for plaintiff for $2,700.   Defendant appealed.

*Errors assigned* were (5) rulings on evidence, quoting the bill of exceptions ; (6) above instructions, quoting them.

*John P. Blair* and *James S. Campbell*, for appellant.—A bank with which a check is deposited by a third party to the credit of another bank and so placed, can, when apprised of the forgery of an indorsement already on the check when so deposited, charge that check back against said bank's account and deduct the amount of it therefrom, even though said check has not been indorsed by the bank to whose credit it has been deposited, provided it has received a credit for said check : Rapp v. National Security Bank, 136 Pa. 426 ; American Trust & Saving Bank v. Gruder, etc., Mfg. Co., 150 Ill. 336 (37 N. E. Repr. 227).

A general custom followed by the banks in Pittsburg and vicinity to mark with a stamp a check presented by an agent of another bank for the latter's credit, and to regard that as an indorsement, is admissible : Shaffstall v. McDaniel, 152 Pa. 598 ; Adams v. Ins. Co., 95 Pa. 348 ; Carter v. Phila. Coal Co., 77 Pa. 286.

It is perfectly proper and legal for banks to agree that for convenience in the collection of commercial paper, the bank with which a check is deposited for the benefit of another bank may stamp it as deposited for that bank's credit, and such action will constitute the latter an indorser as to the former : Blanchard v. Hilliard, 11 Mass. 85 ; Warren Bank v. Suffolk Bank, 64 Mass. 582.

The delay of a month and a half of plaintiff in notifying defendant of the forgery prevents a recovery, for in that time the funds of the Delmont National Bank in the hands of the Bank of Pittsburg were removed, and the Delmont National Bank is now insolvent ; thus defendant was deprived of a remedy.

In view of the evidence the court erred in virtually taking the question of negligence of the plaintiff, in not giving notice, from the jury by instructing them twice, distinctly, that plaintiff had notified the bank promptly upon his discovery of the forgery.

Where one of two parties who are equally innocent of actual fraud must lose the one whose misplaced confidence in an agent or attorney has been the cause of the loss, shall not throw it on the other : Penna. R. R. Co.'s App., 86 Pa. 80.

John A. Emery, with him J. N. Banks, for appellee.

OPINION BY MR. JUSTICE STEWART, January 6, 1908:

The Bank of Pittsburg accepted a check for $2,700 drawn by the plaintiff on the First National Bank of Indiana, the defendant, payable to the order of C. M. Johnston, and bearing what purported to be an indorsement by the payee and a subsequent indorsement by one McQuaide. The Bank of Pittsburg, having an open account on its books with the Delmont National Bank, presumably at the direction of the last indorser, credited the latter bank with the amount of the check, and, having indorsed it with an express guarantee of the genuineness of the prior indorsements, forwarded it to the Bank of Indiana, where it was charged up against the deposit account of the drawer. The check had never been in the hands of the payee; it had been left by the drawer in the hands of his attorney to be delivered over to the payee for or upon the satisfaction of a certain mortgage. Instead of being so applied the check, with a forged indorsement of the payee's name, was presented to the Bank of Pittsburg, and was by it accepted and credited to the account of the Delmont National Bank, of which McQuaide, the plaintiff's attorney, was president. A year later, May 1, 1906, Johnston, the payee, told the plaintiff that he had not indorsed the check. To assure himself that he had drawn the check payable to the order of Johnston and not to the order of his attorney, plaintiff the same day procured the check, and upon examination found that it was payable to Johnston's order, and that it bore an indorsement purporting to be Johnston's. Six weeks thereafter he exhibited the check to Johnston, who positively repudiated the indorsement. The same day the plaintiff notified the Indiana bank of the forgery, and made demand for reimbursement. This brief statement of the facts is sufficient for an understanding of the only assignments of error in the case which it is necessary to consider.

In view of plaintiff's admission that he was informed by Johnston as early as May 1, 1906, that he had not indorsed the check which plaintiff then knew was drawn payable to Johnston's order, and that he had not notified the defendant bank of such denial for six weeks thereafter, defendant offered evi-

dence to show, first, that the Delmont Bank is insolvent; second, that between May 1, 1906, when plaintiff was notified by Johnston that he had not indorsed the check, and June 15, following, when plaintiff notified the Indiana Bank of the forgery, the Bank of Pittsburg had in its hands funds of the Delmont National Bank sufficient to reimburse it on account of its acceptance of the forged check. The purpose of the offer was to afford ground for the contention that the Bank of Pittsburg, which, because of its guarantee of the genuineness of the indorsements, was liable over to the defendant bank, had been prejudiced by negligence of the plaintiff in failing to promptly notify the defendant bank of the forgery ; this on the theory that the defendant bank, in order to hold the Pittsburg bank, was bound to interpose to plaintiff's demand against it whatever equities the former had. The offer was rejected because, as stated in the opinion filed refusing a new trial, the effect of it would be to make the Delmont Bank an indorser of the check, whereas in fact its name does not appear in connection with the check and it was a stranger to the transaction. But the liability of the Delmont Bank on the check was not a question in the case ; whatever liability it was under to the Bank of Pittsburg was for money which had been paid or credited to it by mistake, and to which it had no claim. That the Pittsburg Bank would have the right to charge back on its books the credit given the Delmont Bank on this forged indorsement, cannot be questioned. The latter had received a credit to which it was not entitled, for which it had given nothing, and the withholding of it by correction on the books of the Pittsburg Bank could not in any way have prejudiced the Delmont Bank. The latter was never in position to demand the credit; the Pittsburg Bank, on discovery of the forgery, could successfully have resisted any attempt to enforce such credit. With the evidence in, the question would have been for the jury to decide under proper instructions, whether facts necessary to establish negligence on the part of the plaintiff to the prejudice and loss of the Pittsburg Bank had been made out. Since the evidence should have been admitted, the fifth and sixth assignments of error must be sustained.

Judgment reversed, and venire facias de novo awarded.