# Califf *v.* First National Bank of Towanda, Appellant.

*Banks and banking—Checks—Payment of checks—Forgery—Settlement of book.*

The contract between a bank and its customers is to pay the customer's checks or bills to the person or persons designated by the customer, and to none other, and if a check or bill is payable to order, the banker has only authority to pay it to the payee or to another person who becomes the holder by genuine, or duly authorized indorsement.

When a bank pays a check made payable to order and the indorsement is forged or unauthorized, it is the same as if payment had not been made and the amount due to the depositor is not thereby affected.

On the settlement of his bank book and the return of his checks the depositor is not bound to examine the latter to see that the indorsements are correct. He may assume that the bank has ascertained their genuineness before paying. A bank book settled, balanced up and checks returned to the depositor, will of course become an account stated if not promptly examined and errors of amount pointed out for correction, but the depositor is under no obligation to follow up and ascertain the genuineness of the indorsements that carry the title after the check has left his hands.

The duty of a depositor whose check has been paid upon an unau-

thorized indorsement is to give notice with reasonable promptness. All that he need do in any case is to give notice promptly according to the circumstances and usages of the business.

*Principal and agent—Letter of attorney—Scope of agent's authority—Indorsing check.*

Letters of attorney are strictly interpreted and the authority is never extended beyond that which is given in terms, or that which is necessary and proper for carrying the authority so given into full effect.

A power of attorney to lease and manage a farm confers no authority on the attorney to indorse a check which has no connection with the business of the farm.

Argued March 11, 1908. Appeal, No. 208, Oct. T., 1907, by defendant, from judgment of C. P. Bradford Co., Feb. T., 1907, No. 183, on verdict for plaintiff in case of John N. Califf v. The First National Bank of Towanda. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Assumpsit to recover the amount of a check. Before FANNING, P. J.

The facts appear by the opinion of the Superior Court.

Verdict and judgment for plaintiff for $383.89. Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

*J. C. Ingham,* with him *William Little,* for appellant.—It is an established principle of commercial law that one claiming a right of action on account of the forgery or other unauthorized use of a negotiable instrument shall give prompt notice to the party against whom such claim is to be made: Iron City Nat. Bank v. Fort Pitt Nat. Bank, 159 Pa. 46; States v. First Nat. Bank, 203 Pa. 69; Carmalt v. Post, 8 Watts, 406; Rick v. Kelly, 30 Pa. 527; Raymond v. Barr, 13 S. & R. 318; Curcier v. Pennock, 14 S. & R. 51; Ins. & Trust Co. v. Bank, 185 Pa. 586; Leather Manufrs. Bank v. Morgan, 117 U. S. 96 (6 Sup. Ct. Repr. 657).

*Chas. M. Culver*, for appellee, cited: Cunningham v. First
Nat. Bank of Indiana, 219 Pa. 310; United Security Life Ins.
& Trust Co. v. Bank, 185 Pa. 586; Houser v. Nat. Bank of
Chambersburg, 27 Pa. Superior Ct. 613; Clark & Co. v. Savings
Bank, 31 Pa. Superior Ct. 647; Hansell v. Downing, 17 Pa. Su-
perior Ct. 235; Estate of The Bank of Pennsylvania, 60 Pa. 471.

OPINION BY PORTER, J., October 12, 1908:

Some time prior to April 6, 1901, one M. C. Decker ap-
plied to the plaintiff, who is an attorney at law, for a loan to
Mrs. Matilda Brown, the mother-in-law of Decker.    Decker
was a minister of the gospel and the evidence in this case es-
tablished nothing which ought to have aroused the suspicion
of the plaintiff as to the regularity of the transaction.   Being
satisfied as to the sufficiency of the land owned by Mrs. Brown,
as a security, the plaintiff acting for Mrs. Emily L. Rice, a
client, arranged to make the loan taking as security there-
for a note with the warrant of attorney to confess judgment.
The plaintiff drew such a note and gave it to Decker for the
purpose of having it executed.    Decker, on April 6, 1901,
returned this note, with what purported to be the signature
of Mrs. Brown and two subscribing witnesses.    The plain-
tiff thereupon caused judgment to be entered upon the note,
paid off certain claims, and mailed to Mrs. Matilda Brown,
at her proper address, a letter containing a check on the de-
fendant bank, payable to her order, for $364.74, the amount
of the balance of the loan, the check was drawn by the plaintiff
upon his own account, as a depositor of the First National
Bank, the defendant. This check was presented by M. C.
Decker at the Athens National Bank, of Athens, Pa., and
by that bank negotiated, Decker indorsing it in this form:
"Matilda Brown, per M. C. Decker, attorney in fact," which
indorsement was guaranteed in writing, by the Athens Na-
tional Bank, upon the back of the check in this form: "In-
dorsement guaranteed, M. J. Murphy, cashier."    Following
this indorsement was the indorsement by the Athens Na-
tional Bank in this form: "Athens National Bank, Athens,
Pa., M. J. Murphy, cashier." The check thus indorsed was on

April 8, presented by the Athens National Bank to the First National Bank of Towanda, the defendant, and was by that bank paid and charged to the account of the plaintiff. The check remained in the possession of the defendant bank until February 14, 1902, when the plaintiff's bank book was written up, balanced and this check, with others, was delivered to him. In the latter part of May, 1903, Mrs. Rice wrote to Mrs. Brown requesting payment of interest on the judgment, and Mrs. Brown replied, saying: "that she did not know what she meant." Some time in June, 1903, the plaintiff with this letter which had been written by Mrs. Brown to Mrs. Rice and the check in question in his possession went to see Mrs. Brown about the matter and she then told him that she had never received the check and knew nothing about the transaction. The plaintiff on the same day, while on his way home after his call on Mrs. Brown, called at the Athens National Bank and told the officers of that institution what Mrs. Brown had said. But there is no competent evidence that he at that time reported the matter to the defendant bank. Nothing further was done in the matter until April, 1906, when a writ of scire facias was issued on the judgment. Matilda Brown, on May 7, 1906, presented her petition praying the court to open the judgment, averring that she had never had any dealings with the plaintiff (Mrs. Rice) and had never received any money or property from her, that the petitioner had never given to the plaintiff, or to anyone for the plaintiff, the note upon which the judgment was entered, and that the same was not signed by her nor had she authorized anyone to sign the same for her. Mrs. Rice made answer to the petition, which was filed August 18, 1906. Depositions on behalf of the defendant, in this proceeding to open the judgment, were taken in November, 1906. The plaintiff in the present action, testifies that during the taking of these depositions he became convinced that the contention of Mrs. Brown that she had never authorized the loan and never had received any part of the money arising from the same, was true, and because of that conviction he within a few days called the matter to the attention of the defendant bank. He had exhibited

the check to the officers of the bank, asserting that its payment by the bank had been unauthorized and that he was entitled to be paid the amount of the check, and after the negotiations had been carried on for some time, the plaintiff finally, on December 18, 1906, made a formal tender of the check to the bank, presenting his own check, payable to himself, for the amount thereof and demanded that the bank pay him the $364.74. The bank refused payment, and the plaintiff thereupon brought this action and recovered a judgment in the court below. The defendant appeals.

The contract between a bank and its customer is to pay the customer's checks or bills to the person or persons designated by the customer, and to none other, and if a check or bill is payable to order, the banker has only authority to pay it to the payee or to another person who becomes the holder by genuine, or duly authorized indorsement: United Security Life Ins., etc., Company v. Bank, 185 Pa. 586. The reason of the rule that when a bank pays a depositor's check on a forged indorsement, or an unauthorized one, it is held to have paid it out of its own funds and cannot charge the payment to the depositor's account, is that there is an implied agreement by the bank with its depositor that it will not disburse the money standing to his credit except on his order: Land Title & Trust Co. v. Northwestern National Bank, 196 Pa. 230. When a bank pays a check made payable to order and the indorsement is forged or unauthorized, it is the same as if payment had not been made and the amount due the depositor is not thereby affected: United Security Life Ins., etc., Co. v. Bank, 185 Pa. 586; Houser v. National Bank of Chambersburg, 27 Pa. Superior Ct. 613; Clark & Co. v. Savings Bank, 31 Pa. Superior Ct. 647. When a depositor seeks to recover the amount of a check which has been paid by a bank upon a forged or unauthorized indorsement, "It is always a good defense that the loss complained of is the result of the complainant's own fault or neglect, and it will require a statute in very explicit terms to do away with so universal a principle of law founded on so incontestable a principle of justice:" Iron City National Bank v. Fort Pitt National Bank, 159 Pa.

46. The evidence in the present case disclosed nothing which would justify an inference of negligence on the part of the plaintiff in the manner in which this check was issued. The check was in proper form and it was sent in a letter duly addressed to the payee and deposited in the mail. The appellant contends, however, that the plaintiff was negligent in two instances: (1) That when his book was balanced and the check returned to him in February, 1902, he was bound to see that this check did not have the personal indorsement of Mrs. Brown, but only of Decker as her attorney in fact, that this was sufficient to have excited the suspicions of plaintiff and ought to have caused an immediate investigation by him, and it was negligence not to have made such investigation; (2) that when, in June, 1903, Mrs. Brown told the plaintiff that the check had not been received by her it was the duty of the plaintiff to have at once notified the defendant bank, and that his failure to do so was such negligence as must defeat his recovery. The only assignments of error which touch this branch of the case are based upon the refusal of the court below to give binding instructions in favor of the defendant. If, therefore, the evidence was such as to require the submission of the question of the negligence of the plaintiff to the jury, those specifications of error cannot be sustained.

"On the settlement of his bank book and the return of his checks the depositor is not bound to examine the latter to see that the indorsements are correct. He may assume that the bank has ascertained their genuineness before paying. A bank book settled, balanced up and checks returned to the depositor, will of course become an account stated if not promptly examined and errors of amount pointed out for correction, but the depositor is under no obligation to follow up and ascertain the genuineness of the indorsements that carry the title after the check has left his hands:" United Security Life Ins., etc., Co. v. Bank, 185 Pa. 586. An examination by the plaintiff of the indorsement upon the check in question would have disclosed nothing which the defendant did not already know. The check had not been indorsed by the payee, and did not pretend to be so indorsed. The indorsement was by another,

as attorney in fact for the payee, and the authority of that attorney in fact to so indorse was guaranteed by the Athens National Bank. . The plaintiff had no evidence as to the authority of the attorney in fact to indorse which was not already in possession of the defendant bank.   He had a right to assume that the bank had ascertained the validity of the indorsement, and that it was a question between the two banks.

When the. plaintiff called on Mrs. Brown in June, 1903, he was not informed by her that she had not authorized Decker, as her attorney in fact, to indorse checks and bills; all that she told him was that she had not received this check.   Even if Mrs. Brown did not receive the check, if Decker had authority to indorse it for her, then the indorsement was valid and the payment was good.   There was no positive evidence that the plaintiff had acquired information to the effect that Decker was without authority. to indorse, as attorney in fact.   The fact that the check had not gone into Mrs. Brown's personal possession may have been a suspicious circumstance, but if from that circumstance an inference is to be drawn that the plaintiff was negligent in failing to give notice at once, the inference was to be drawn by. the jury and not by the court, as a matter of law.   The duty of a depositor whose check has been paid upon an unauthorized indorsement is to give notice with reasonable promptness.   "All that he need do in any case is to give notice promptly according to the  circumstances and usages of the business, and unless the position of the party receiving the money has been altered for the worse in the meantime it would seem that the date of the notice is not material:" Iron City Nat. Bank v. Bank, 159 Pa. 46.   The plaintiff did communicate to the Athens National Bank, which was liable to the defendant bank upon its. guaranty of the indorsement, the statement which Mrs. Brown had made to him, on the same day that he had received the communication.   There was not at the trial in the court below, any attempt made to produce evidence that the position of the First National Bank had been altered for the worse, between June, 1903, and the time of the bringing of this action, because of the failure of the plaintiff to communicate directly to that bank what Mrs. Brown had

said. The Athens National Bank which had received the money from the defendant and was liable over, in case the indorsement was without authority, had immediate notice of all the plaintiff knew. We are of opinion that the case, under the evidence, was for the jury: Cunningham v. First National Bank, 219 Pa. 310.

The defendant assigns for error the refusal of the court below to admit in evidence the power of attorney from Matilda Brown to M. C. Decker. This instrument was dated March 17, 1896, and empowered Decker to lease certain lands owned by Matilda Brown, and collect the rents thereof. After at considerable length enumerating the powers conferred, as to leasing for a money rent, or for a share and part of the product, or to give a share of the products of said land for working the same and to make contracts for the farming of said lands, this sentence occurs in the concluding part of the instrument: "In fact, giving and granting unto my said attorney full power and authority to make such contract and contracts for the farming of the said land as shall seem advisable and best in the opinion of my said attorney; also giving and granting unto my said attorney full power and authority to do and transact any and all business in which I may be interested, giving and granting unto my said attorney, by these presents, power and authority to act for me in the premises as fully and completely as I might do if personally present." Letters of attorney are strictly interpreted and the authority is never extended beyond that which is given in terms, or that which is necessary and proper for carrying the authority so given into full effect: Campbell v. Foster Home Association, 163 Pa. 609; Wilson v. Wilson-Rogers, 181 Pa. 80; Union Trust Co. v. Means, 201 Pa. 374; MacDonald v. O'Neil, 21 Pa. Superior Ct. 364. "If authority be vested in the agent in very general terms, but the instrument enumerates certain special objects and acts this specification will be regarded as a limitation upon the general words; and the authority will be confined to action within the scope of the enumerated objects, unless there be some phraseology in the instrument, or some peculiar circumstances, which impress a different purpose upon the instrument:"

1 Daniel on Negotiable Instruments, p. 233, sec. 281. It was held, in Rossiter v. Rossiter, 8 Wendell, 494, that a power of attorney to collect debts, to execute deeds of land, to accomplish a complete adjustment of all concerns of the principal in a particular place, and to do all other acts which the principal could do in person, conferred no authority on the agent to sign a note in his principal's name, the general words being limited by the matters specially mentioned. When the agent was authorized to manage certain real estate with the general words extending his power to all property of the principal of every description, and authorizing him "to do all lawful acts concerning all the principal's business and, affairs of whatever nature or kind soever," it was held that the agent could not indorse bills in his principal's name: Esdaile v. LaNauze, 1 Younge & Col. 394. The power of attorney in the present case was offered by the defendant for the purpose of showing that M. C. Decker had authority to indorse the check in question, as attorney in fact for Matilda Brown. The manifest intention of the entire instrument was to vest in M. C. Decker authority to lease and manage the farm of Matilda Brown and the general words above quoted, in the concluding part of the document, must be limited to transactions growing out of the special business to which the instrument refers. The meaning of the letter of attorney was a question for the court, and, standing alone, it was not sufficient for the purpose for which it was offered in evidence. All the assignments of error are dismissed.

The judgment is affirmed.