## Varner, Appellant, *v.* South Penn Oil Company.

*Principal and agent — Power of attorney — Construction of — Power to lease—Reduction of rental—Oil lease.*

Letters of attorney are strictly interpreted, and the authority is never extended beyond that which is given in terms, or that which is necessary and proper for carrying the authority so given into full effect.

Where tenants in common by letter of attorney give authority to an agent to execute an oil lease and collect the rentals, the agent does not, in the absence of other authority from his principals, have authority to reduce the rentals specified in the lease which he has executed.

Argued April 17, 1916.   Appeal, No. 80, April T., 1916, by plaintiffs, from judgment of C. P. Greene Co., March T., 1912, No. 63, on verdict for plaintiff in case of James L. Varner, et al., v. South Penn Oil Company.   Before ORLADY, P. J., HENDERSON, KEPHART, TREXLER and WILLIAMS, JJ.   Reversed.

Assumpsit for rentals under an oil lease.   Before INGHRAM, P. J.

The court charged as follows:

In this case you have heard from the evidence, Joseph Varner, a resident of West Virginia, died some time in the year 1896, in August or September, I believe of that year leaving a widow and eight children surviving him.

He was at the time of his death the owner of a very considerable body of real estate in West Virginia and Pennsylvania.   There being, perhaps some claims against both the West Virginia and Pennsylvania land for purchase-money.

It seems from the evidence in this case that the West Virginia land had been somewhat developed for oil and was producing a large amount of oil.   That the Pennsylvania land was undeveloped.

But after the death of Mr. Varner, it appears from the

evidence, that the family entered into an arrangement among themselves for the division of the oil, or the collection of the amount due from the oil and application of it towards the payment of the purchase-money on the land both in West Virginia and Pennsylvania. And it was the arrangement or agreement entered into that the son-in-law of Mr. Varner, George W. Blaker, was to act as the agent for them in the collection of the money due for the oil and make payments on the claims against the estate.

They also entered into a family arrangement for the division of the lands among themselves, which they had a right to do by having a guardian for the minors. That question is not before us, but as one of the facts developed in the case. The division was made between them and Mrs. Blaker was awarded the part of the lands in Greene County known as the John Shanes tract, upon which some of the gas companies are now building or have built a pump station.

[It further developed from the evidence, that the parties were anxious to have as much out of their lands, both oil and gas as they could get, and they appointed the son-in-law and brother-in-law of the plaintiffs, the husband of Mrs. Blaker, who was one of the plaintiffs, attorney in fact for the purpose of leasing the lands in West Virginia and Pennsylvania,] (14) that had not already been leased, and for the purpose of collecting any money due the estate for the oil that was being produced from the wells already drilled, and for the leasing of the lands and collecting of rental from any gas wells that might be drilled afterwards. Mr. Blaker was appointed their attorney in fact and undertook to do the business for them, and the matter progressed for some time until as you have heard, Mr. Blaker became unsettled in his mind in some way and was taken to Weston, West Virginia, possibly is there now. His wife was a witness before you.

But after a time, the children of Joseph Varner, be-

sides Mrs. Blaker, she was not with them in that, discovered that Mr. Blaker had reduced the rental of the wells.   They had drilled five oil wells and the production was about to stop or was not sufficient and the company proposed to drill some of the wells deeper for gas, if they could get a reduction on these wells.   The lease called for three hundred dollars for each gas well per year while gas would be marketed off the premises.   But the company was unwilling to develop for some reason unless they could get a reduction, and it is claimed by the defendants that Mr. Blaker, the attorney in fact for the heirs of Joseph Varner and his wife, entered into an agreement with them by which he did reduce the gas rental on well No. 3 to fifty dollars a year and on wells Nos. 1 and 4 to seventy-five dollars each.   They claim that is the amount they were to pay each year to Mr. Blaker and his wife, one of the plaintiffs, that it was paid up to a certain time, I don't remember when, that will be a question for you.   But they claim they paid it up to the time Mr. Blaker was taken away, at seventy-five dollars a year on wells 1 and 4 and at fifty dollars on well No. 3.

The balance of it, the widow and children of Joseph Varner refused to receive, claiming it was not enough, and they have brought this suit for what they claim is due on these wells, 1, 3 and 4, at three hundred dollars per year for each well.

[As you have already heard us intimate to counsel, taking the papers,—all the papers submitted by the parties here, and the testimony as we have heard it and as you have heard it, we are of the opinion that George W. Blaker, the attorney in fact, had a right under the power of attorney by which he was appointed to act for the heirs, to lease the land for oil and gas, and had a right to reduce the rentals on those wells, if he found it to the advantage of the parties to do so.

He reduced it—no question about that, and there is no question of bad faith on the part of Mr. Blaker or the South Penn Oil Company, the defendant here.

We think the agreement entered into between Mr. Blaker, that is George W. Blaker, and the South Penn Oil Company for the reduction of the rental receipts on these gas wells is binding upon the parties appointing Mr. Blaker as their attorney in fact.]   (15)

We have been requested by the plaintiff in this case to say to you:

1. The letters of attorney from the widow and heirs of Joseph Varner, deceased, to George W. Blaker dated September 16, 1896, authorizing the said attorney to make sale of all the oil and collect all rentals due by reason of any contract for the lease of lands, to receive money by reason of such sale and to receipt for such moneys, and to do and perform all things that may be necessary to his duties in selling and disposing of the oil and receiving moneys therefor, but did not authorize or empower him to make or modify any contract already made in which the heirs of Joseph Varner, deceased, had any rights or interest and the reduction agreements dated respectively, November 3, 1905, and August 23, 1906, made by him, the said George W. Blaker, are without authority and do not bind the heirs of the said Joseph Varner, deceased, the plaintiffs in this action.

Answer. That point, gentlemen of the jury, we have refused. We have already instructed you to the contrary.   (17)

3. That there is no sufficient evidence of an estoppel in this case against James L. Varner, Belle Lemley, Elizabeth J. Varner, Andrew J. Varner, Mary E. Phillips, Garnet Welsh, Sarah Mapel and Louraine Bump, all of whom are plaintiffs in this action.

Answer. That point is correct, gentlemen of the jury. There is no evidence of estoppel sufficient to prevent them recovering the amount for which we have instructed you to return a verdict. Beyond that they are not entitled to recover.   (18)

4. That under all the evidence in the case the verdict of the jury should be for the plaintiffs.

548  VARNER, Appellant, *v.* SOUTH PENN OIL CO.

Opinion of Court below—Opinion of the Court. [64 Pa. Superior Ct.

Answer. That point is correct and is affirmed. Your verdict will be for the plaintiffs for the amount agreed upon between the parties at $737.36.  (19)

Verdict and judgment for plaintiffs for $737.36. Plaintiff appealed.

*Errors assigned* were various instructions as above, quoting them.

*Carl J. Crawford* and *T. H. Wilkinson,* for appellants. —A special power must be strictly interpreted and whoever deals with an agent constituted for a special purpose deals at his peril when the agent passes the precise limits of his power: McDonald v. O'Neal, 21 Pa. Superior Ct. 364; Slease v. Naysmith, 14 Pa. Superior Ct. 134; Union Trust Co. v. Means, 201 Pa. 374; Lewis v. Lewis, 203 Pa. 194.

*R. W. Cummins* and *A..H. Sayers,* for appellee.

OPINION BY TREXLER, J., October 9, 1916:

The defendant, the South Penn Oil Company, operated certain oil and gas wells in Green County under a lease from Florence Blaker and George Blaker, her husband. The company, claiming that the wells were not productive, secured a reduction of the rental from George Blaker who was acting as attorney for the heirs of Joseph Varner to whom Florence Blaker had transferred the oil and gas royalties or rights, she as one of the heirs retaining her part. His authority to make the reduction is the matter to be determined.

Originally the property belonged to Joseph Varner. His heirs entered into an agreement in regard to his real estate on September 16, 1896, and on the same day in furtherance of the agreement they gave George Blaker a power of attorney to make sale each month of all the oil of the estate and apply the proceeds of all the oil "which has run since the death of Joseph Varner and which may

be run hereafter" to the payment of the debts of decedent. This power of attorney made no reference to gas. The word lease is not mentioned. Evidently in the contemplation of the parties under the agreement and the power of attorney the oil which was to be sold was such as came from developed property and was running. At the time the power of attorney was given the only property of the estate producing oil was in West Virginia. We can find nothing in the power of attorney which authorized George Blaker to reduce the royalty in the lease made by him and his wife. Letters of attorney are strictly interpreted and the authority is never extended beyond that which is given in terms, or that which is necessary and proper for carrying the authority so given into full effect: MacDonald v. O'Neil, 21 Pa. Superior Ct. 364; Califf v. First National Bank of Towanda, 37 Pa. Superior Ct. 412; Stokes v. Dewees, 24 Pa. Superior Ct. 471 (474).

If we examine the other papers which appear in the case, we cannot find any authority in Blaker to reduce the rental. If it does not appear in the written agreements of the parties that he had such power, defendant's case must fail. Blaker's authority cannot be proven by his declarations. The lease for the oil and gas to the defendant company was made by Florence Blaker June 14, 1898, and was for a period of ten years. Prior to that she had obtained a deed for the eighty-four acres so leased from the other heirs, the date of the deed being April 1, 1898. On March 25, 1899, all the heirs of Joseph Varner by agreement duly entered into provided that the royalty and rentals arising from oil and gas on the lands of the said decedent should be divided among said heirs and should belong to them for the term of five years beginning April 1, 1898, "notwithstanding any division or conveyance of said lands or any part of them that shall be made......It being understood and agreed that the undivided lands of said decedent......shall remain in common to the said widow and heirs subject to the written

agreement between them of September 16, 1896." The agreement provided further "that no party to this agreement to whom any parcel of said land shall be conveyed, as aforesaid, and which is subject to this agreement, shall be at liberty to refuse to lease the same during this five years period from April 1, 1898, provided he is offered ordinary oil and gas lease by some responsible party of $1 per acre, or more, per annum, in advance for the same; and if any party to this agreement shall refuse to lease his said land so conveyed to him, when these terms and conditions are offered to him, it is hereby jointly and severally agreed that Geo. W. Blaker, be, and he is hereby empowered, as our, and each of our attorney in fact for said purpose, to enter into a lease of said premises for oil and gas with some responsible oil or gas company upon the aforesaid conditions, hereby ratifying and confirming what he may or shall do in the premises, as our said attorney; the terms of the said lease not to extend beyond April 1, 1903." Mrs. Blaker in compliance with this agreement deeded to the other heirs their proportionate share of the rights under the lease of the defendant company. It will be noticed that there is nothing in the provisions of the agreement above quoted which would authorize Blaker to reduce the rental stipulated in the lease. His power in the premises was contingent upon a refusal of any party to whom a parcel of land should be conveyed refusing to make an ordinary oil and gas lease if offered to him at one dollar an acre or more per annum. The facts before us do not show conditions as set forth in the agreement above quoted. It may also be noted that the terms of said lease, except as to undivided lands, were not to extend beyond April 1, 1903, and therefore his authority to reduce the rental, if he ever had any, ceased, the reduction of the royalty being made long after the expiration of said five years. The provisions of the said agreement that all moneys coming to or accruing by reason of said agreement shall be paid to George W. Blaker, gave him undoubted power to col-

lect, but we cannot see how the words can be construed to mean that he should have the right to reduce the royalties.

We have come to the conclusion that the power of attorney and the agreement of 1896 had not in contemplation the exercise of any such powers as George W. Blaker assumed in reducing the royalties. We do not think the agreement of March 25, 1899, in any of its provisions authorized such act on his part or amplified the powers which he had under the agreement of 1896. The court in its charge stated that Blaker had authority from the Varner heirs to lease lands in West Virginia and Pennsylvania, but the paper purporting to give such authority, dated Nov. 23, 1897, was not executed. We conclude that the court erred in holding that the plaintiffs could only recover the reduced royalties and that the case must go back for retrial.

The judgment is reversed and a venire facias de novo awarded.