## Fleming et ux. v. Fleming

*Thomas G. Gregory*, for plaintiff.

*A. J. Straub*, for defendant.

HIPPLE, P. J., February 17, 1944.—This is an action in assumpsit in which plaintiffs seek to recover moneys alleged to be due them by defendant arising out of the collection of rentals by defendant from certain real estate owned by plaintiffs. The case was heard by the court sitting without a jury under the Act of April 22, 1874, P. L. 109, 12 PS §688, and from the pleadings, evidence, and admissions of counsel at the time of the hearing the court makes the following

### *Findings of fact.*

1. Plaintiffs and defendant are residents of St. Marys Borough, Elk County, Pa., and P. F. Fleming,

Jr., a plaintiff, and George A. Fleming, defendant, are brothers.

2. Plaintiffs own three parcels of real estate in St. Marys Borough, Elk County, Pa., upon which are erected a store building, dwelling houses, etc. On September 1, 1937, plaintiffs executed and delivered to St. Marys Savings & Loan Association a mortgage upon this real estate to secure the payment of the real debt of $8,500 in the manner prescribed by the bylaws of the mortgagee, the mortgage being recorded September 1, 1937, in Elk County, in mortgage book no. 26, page 121.

3. On September 1, 1937, plaintiffs executed and delivered to defendant a power of attorney, the recitals of which set forth that plaintiffs were the owners of three parcels of land in St. Marys Borough, subject "to the lien of a Mortgage in favor of St. Marys Savings & Loan Association in the sum of Eighty-five Hundred ($8500.) Dollars, dated September 1, 1937, and recorded in the Recorder of Deeds Office of Elk County, Pa., in Mortgage Book 26, page 121"; and that "it is the desire of the said P. J. Fleming, Jr., and Genevieve Fleming, husband and wife, to empower George A. Fleming to rent so much of said premises as are not occupied by the said P. J. Fleming, Jr. and Genevieve Fleming, husband and wife, and to collect the rent therefor and apply the same to the payment of said mortgage, and the payment of taxes, insurance and other charges which may be incurred in the proper maintenance of said premises". This writing thereupon empowered defendant as attorney for plaintiffs to rent the real estate and authorized him to collect the rentals, recover the same by legal proceedings if necessary, to eject defaulting tenants from the premises, to determine the tenancy or occupancy of the real estate and to recover and retain possession of the real estate held by defaulting tenants. It further provided that the attorney-in-fact "may from time to time pay to the undersigned [plaintiffs] such parts of the rents

collected by him as in his discretion is not needed to meet the payments on the said mortgage, taxes, insurance and costs of maintenance of said premises".

4. The term during which the power of attorney was to be in force and effect is set forth therein in the following language:

"The power of attorney herein conferred shall continue until the said mortgage shall be fully paid and satisfied; and for his said services the said George A. Fleming shall receive a commission of five (5) per cent. on all rents by him collected from the tenants of said premises."

5. Defendant proceeded to exercise the powers set forth in this letter or power of attorney, collected the rentals from the real estate in question, and as of February 1, 1942, had in his possession the sum of $671.80 representing the rentals collected, less proper charges against the same together with commissions due defendant.

6. On January 28, 1942, the mortgage dated September 1, 1937, and referred to in the letter or power of attorney of the same date was satisfied of record by T. G. Gregory, Esq., attorney-in-fact for the mortgagee, by virtue of a power of attorney directed to him and after exhibiting to the Recorder of Deeds of Elk County a receipt from the treasurer of the St. Marys Savings & Loan Association showing payment of the full amount secured by the mortgage.

7. Plaintiffs applied sometime prior to January 27, 1942, to St. Marys Savings & Loan Association for a new mortgage loan to secure the balance unpaid on the mortgage of September 1, 1937. This application was approved on January 27, 1942, and a new mortgage was executed by plaintiffs to the savings and loan association to secure the real debt of $5,400, that being the balance remaining unpaid upon the mortgage of September 1, 1937, the new mortgage being recorded in Elk County in mortgage book no. 33, page 89. The

mortgage dated January 27, 1942, was given for the amount of the principal and interest due on the old mortgage, plus the expenses incident to the execution and recording of the new mortgage.

8. The first mortgage would, under ordinary circumstances, have matured under the bylaws of the savings and loan association on March 31, 1948.

9. The mortgage of September 1, 1937, was refinanced instead of being reset, and under such procedure the original mortgage is regarded as paid off and a new mortgage and bond are taken, the monthly instalments to be paid on the new mortgage being $88.82.

10. When the original mortgage of September 1, 1937, was executed, and the loan evidenced thereby made, the St. Marys Savings & Loan Association requested that the power of attorney given from plaintiffs to defendant be executed and the loan by the association would not at that time have been made if this request had not been complied with.

## Discussion

Plaintiffs urge that no matter how or in what manner the mortgage of September 1, 1937, was paid, and therefore satisfied of record, such payment and satisfaction constitutes a termination of the letter or power of attorney executed by plaintiffs to defendant, while defendant strongly argues that the power of attorney was given to secure payment of *a loan* and is therefore an irrevocable power and cannot be terminated until the loan evidenced and secured by the mortgage of September 1, 1937, is paid in full; that the power of attorney continues in effect until the *loan* secured by the mortgage of 1937 is paid; that the real debt originally secured by the mortgage of 1937 is not fully paid; that even though the loan was refinanced this did not constitute full payment or satisfaction of the original *loan*, and therefore the power of attorney was

not terminated according to its terms and the intention of the parties.

The question is a narrow one and resolves itself into the issue of what was meant by the expression in the power of attorney that "the power of attorney herein conferred shall continue until the said mortgage [the original mortgage of 1937] shall be fully paid and satisfied".

Therefore the sole question before the court is whether the action of plaintiffs in securing a new mortgage loan on January 28, 1942, from the St. Marys Savings & Loan Association, the original mortgagee in the mortgage of 1937, and the use of the proceeds therefrom to pay and have satisfied the original mortgage of September 1, 1937, terminates the power of attorney and thereby the agency of defendant, according to its terms.

There is no question of fraud involved and it is not necessary to consider whether the action of plaintiffs in obtaining a new mortgage was intended in any manner to be a fraud upon defendant. We have found as a fact, based upon defendant's testimony, although no officer or representative of the savings and loan association was called to corroborate him, that the original loan evidenced by the mortgage of September 1, 1937, would not have been made by the association unless plaintiffs named defendant as their attorney-in-fact to collect the rentals from the real estate in question until the mortgage of 1937 was satisfied. Notwithstanding this fact, there is nothing in the testimony to show that, when the new mortgage of January 28, 1942, was executed, and a new loan secured from the savings and loan association, the association required as a prerequisite or consideration for the making of the new loan and mortgage that a new power of attorney be executed, or the original power of attorney be enlarged and continued in force until the satisfaction of the new mortgage. Whatever may have been the

reasons impelling the savings and loan association to require the execution of the power of attorney at the time the original loan was made, there is nothing to indicate that those same reasons existed or had any consideration whatever in the execution of the new mortgage of January 28, 1942.

Powers of attorney must receive a strict interpretation, and the authority conferred is never extended beyond that which is given in express terms, or which is necessary and proper to carry into effect that which is expressly given, and a power of attorney is evidence of authority to do only those things which are authorized therein: Wilson v. Wilson-Rogers, etc., 181 Pa. 80; Cardon's Estate, 278 Pa. 153; MacDonald v. O'Neil, 21 Pa. Superior Ct. 364; see also cases cited in 32 Vale's Penna. Digest 214, sec. 97.

Defendant cites and relies upon the case of Wood v. Kerkeslager, 225 Pa. 296, but we do not believe that the facts therein are so similar to the instant case as to make that case controlling. In that case a power of attorney was executed by the owner of real estate entitled to damages by way of eminent domain in the taking of real estate for public use. The attorney-in-fact was not only authorized to prosecute the claim for damages and to receive and receipt for the damages awarded, but in addition was to pay a certain sum to plaintiff. The power of attorney specifically provided that the appointment of the attorney-in-fact to receive the damages, and the direction therein to apply the specific sum mentioned after the payment of expenses, counsel fees, and the claim of another creditor of the maker therein was irrevocable. Four months after the execution of this power of attorney, the maker thereof was adjudicated an involuntary bankrupt, and, claims being made by the trustees in bankruptcy, as well as by the parties named in the power of attorney for the payment of the damages awarded, the moneys were directed to be paid to a

third party, without prejudice to the rights of the original creditors named in the power of attorney. Plaintiff thereupon instituted an action against the trustees in bankruptcy and the third party to whom the money had been paid to recover the amounts due to plaintiff as specified in the power of attorney.

In reversing the lower court after refusal to enter judgment for want of a sufficient affidavit of defense, the Supreme Court stated (p. 303):

"If, by the agreement of March 5, 1907, Crow had merely appointed Patton his agent to collect the compensation to be paid to him by the city, the agency would admittedly have been revocable; but it was much more than such an agency. The power of attorney was not only for the purpose of collecting money for Crow, but for others to whom he had assigned portions of the fund. The power did not concern merely the interest of Crow, but was executed by him as a means of effectuating a purpose necessary to protect the rights of the appellants. It was, therefore, not revocable either by him or by his trustees in bankruptcy: Blackstone v. Buttermore, 53 Pa. 266. 'Where a letter of attorney forms a part of a contract, and is a security for money, or for the performance of any act which is deemed valuable, it is generally made irrevocable in terms, or if not so, is deemed irrevocable in law. Although a letter of attorney depends, from its nature, on the will of the person making it, and may, in general, be recalled at his will; yet, if he binds himself for a consideration, in terms, or by the nature of his contract, not to change his will, the law will not permit him to change it:' Hunt vs. Rousmanier, 8 Wheat. 174."

It will be observed that the power of attorney in the above-cited case was given not only for the purpose of collecting money for the maker thereof, but for others to whom the maker thereby assigned portions of the fund arising from the damages to be paid

by reason of the taking of real estate of the maker for public use, and that its primary purpose was to protect plaintiff and assure to him, and others, the payment of moneys owing by the maker. This fact gave to plaintiff therein a vested interest or right in the fund to be received by the attorney-in-fact. There was no right reserved in the maker to revoke the power of attorney; on the contrary the power was specifically declared to be irrevocable, but even if that provision had not been made, under the facts, the power would have been "deemed irrevocable in law".

In the case before us, defendant had no monetary interest in the power of attorney except the commissions to be earned by him arising from his collections of rentals and the performance of the duties imposed upon him, and the St. Marys Savings & Loan Association, original mortgagee, is the only person having an interest in the performance of the acts set forth in the power of attorney by defendant. The power did not form "a part of a contract" between plaintiffs and defendant nor was it executed for "a security for money, or for the performance of any act which is deemed valuable." If any person has a standing to attack the revocation of the power of attorney it would be the St. Marys Savings & Loan Association. The mere fact that the savings and loan association refinanced the mortgage and caused the original mortgage of 1937 to be marked paid and satisfied of record is conclusive that, so far as it was concerned, the power of attorney was no longer in effect, and it was the only person who had an interest or purpose necessary to be protected by the execution of the power of attorney. If it had been the intention of the parties that the power of attorney should continue in force and effect until the original *loan* or any refinancing thereof had been paid in full, the power of attorney would have so stated, but the reference therein is solely to the original mortgage of September 1, 1937. It could

hardly be held that, if plaintiffs had obtained the money necessary to pay in full the amount remaining due upon the mortgage of 1937 from a third party or parties, and the mortgage had therefore been marked paid and satisfied by the original mortgagee, such refinancing would be held to be a part of the original loan.

The power of attorney did not require that the mortgage of 1937 should be paid only out of the rentals obtained from the mortgaged premises, and therefore the payment and satisfaction of the mortgage of 1937 in any manner terminates the power of attorney because it does not matter whether the rents from the real estate were used for that purpose, whether plaintiffs used their own funds or whether they obtained a loan from a third person, even if a new mortgage were executed and recorded as a lien against the real estate.

Courts cannot extend the authority specifically set forth in a power of attorney, but must restrain it, in the absence of satisfactory proof, to the language therein. We, therefore, come to the conclusion that the refinancing of the original mortgage by the execution of a new mortgage on January 27, 1942, to St. Marys Savings & Loan Association was a payment and satisfaction of the original mortgage of September 1, 1937, and therefore make the following

### Conclusions of law

1. The payment of the mortgage from plaintiffs to St. Marys Savings & Loan Association, dated September 1, 1937, and the satisfaction of record thereof on January 28, 1942, was a full satisfaction and payment of the mortgage of September 1, 1937.

2. The power of attorney dated September 1, 1937, from plaintiffs to defendant terminated and became of no force and effect on January 28, 1942, when the mortgage of September 1, 1937, was marked of record as paid and satisfied.

3. Plaintiffs are entitled to judgment against defendant in the sum of $671.80, with interest from February 1, 1942.

Therefore the following order is entered:

### Order

And now, February 17, 1944, the Prothonotary of Elk County is hereby directed to file and enter of record this opinion and order, to give notice thereof forthwith to the parties, or their attorneys of record, and if no exceptions are filed within 30 days after service of such notice the prothonotary is directed to enter judgment in the above case in favor of plaintiffs and against defendant for the sum of $671.80, with interest from February 1, 1942, together with costs of suit.